OPINION OF THE COURT
Fuchsberg, J.
A Justice of the Town Court of the Town of Russell found the defendant James Munafo, Sr., guilty of the charges set out in two informations, one sounding in trespass (Penal Law, § 140.05) and the other in disorderly conduct (Penal Law, § 240.20). The County Court of St. Lawrence County has since affirmed. The narrow issue on which the present appeal turns is whether the evidence was sufficient to establish the offense pleaded in each accusatory instrument. We are convinced it was not.
This case may be said to be a by-product of the distraught state into which the defendant was precipitated when the *329 State Power Authority appropriated a right of way which cut a wide swath across a section of his farm. Taking the facts most favorably to the People, as the County Court affirmance requires us to do, it is fair to say that the defendant, further disturbed when the authority arrived to erect a large transmission line that would have added dramatically to the unwanted division of his land, pursued two successive acts of protest. As a construction crew approached the right of way along its sole means of direct access, a private road located on defendant’s property at a point about a quarter of a mile from the nearest public road, the defendant fired a rifle across its path at a target he had set up on the other side of the area on which the towers were to be raised; the line of sight was south to north and any persons in the general vicinity at the time were located some distance either to the east or west of this trajectory. There is no indication that anyone was endangered by the shot, but defendant, understandably, was divested of the gun. He then positioned himself in the path of an authority backhoe, and, when he refused to move after a police officer told him he would be arrested if he failed to do so, that promise was kept. According to the deposition filed in support of both informations, these events occurred in the presence of "approximately 8 to 10 persons not associated with the power authority”.
 Without condoning defendant’s conduct, and without reflecting on what other measures, civil or criminal, may have been legally supportable in these circumstances to prevent unwarranted interference with the authority’s use of its right of way, but with due regard for the principle that penal responsibility cannot be extended beyond the scope of a charge lodged and proved, we are convinced that the convictions cannot stand. Our reasons follow.
First, as to the trespass, this is a matter that is no stranger to the history of either civil or criminal law. In the setting of a civil action, broadly speaking, trespass includes an impingement on the right to possession (e.g., Oatka Cemetary Assn. v Cazeau, 242 App Div 415). Under prevailing criminal statutes, however, it has been more narrowly reformulated to cover only the conduct of a person who "knowingly enters or remains unlawfully” on "any real property”, i.e., unless he is "licensed or privileged to do so” (Penal Law, § 140.00, subds 1, 5; § 140.05).
Surely the defendant was at least so "privileged”. While *330 as an easement, the authority’s right of way was in the nature of an interest in real property (Restatement, Property, § 450; 3 Powell, Real Property, par 405), Munafo retained the ownership of the affected realty along with the underlying possessory interest (3 Powell, Real Property, par 404; cf. Beardslee v New Berlin Light & Power Co., 207 NY 34, 40-41). Informative too is the long-recognized rule that the grantee of an easement may not maintain an action in trespass against the grantor, the person with the superior right of possession (see Farrer v Piecuch, 278 App Div 1011, subsequent opn 203 Misc 572; Socony-Vacuum Oil Co. v Bailey, 202 Misc 364, 365-366; Prosser, Torts [4th ed], § 13, pp 68-69, n 58).
It would be incongruous to conclude, absent some positive indication of such a design, that the Legislature intended to brush aside these established real property concepts, not only to interdict the grantor of an easement from treading upon his property, but to punish that exercise of his retained right as criminal. Yet there is not the slightest hint that that was its purpose (see, generally, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, pp 14-17). If anything, subdivision 5 of section 140.00 of the Penal Law, by expressly placing in the hands of "the owner” the power to convert certain lawful entries on real property into unlawful ones, suggests quite the contrary.* We therefore hold that the defendant’s act of entering and remaining on the right of way did not violate the section in question.
Focusing now on the accusation of disorderly conduct, we enter an area of our criminal law which, unlike trespass, is not bottomed on deep-rooted principles. Disorderly conduct is a statutory creation. Intended to include in the main various forms of misconduct which at common law would often be *331 prosecuted as public nuisances, and modeled after the English statute which is the progenitor for most American versions of disorderly conduct legislation (5 Geo IV, ch 83), the offense first appeared in this State in local ordinances in 1883 and on a State-wide basis in 1923 (former Penal Law, § 722; see People ex rel. Mulhern v Kaufman, 165 Misc 670, 672-673).
Because of this catchall character, a melange of offenses, some expressly stated in the statute and others not, came to be prosecuted under its banner and, because generally classified as below a misdemeanor, were often disposed of with dispatch so summary as to invite constitutional attack. But, however wide ranging its application, a common thread that ran through almost all of this legislation was a desire to deter breaches of the peace or, more specifically, of the community’s safety, health or morals. (People v Barbera, 127 Misc 864.) And, although it has always been difficult to essay any precise definition of "breach of the peace” (see 2 Wharton, Criminal Law and Procedure [Anderson ed, 1957], § 803), this court has equated that term with "public inconvenience, annoyance or alarm”, the governing phrase of our current disorderly conduct statute (Penal Law, § 240.20, L 1965, ch 1030; People v Pritchard, 27 NY2d 246, 248 [majority opn], 250 [dissenting opn]).
Indeed, a requirement that the disruptive behavior proscribed by our disorderly conduct statute be of public rather than individual dimension was evolving even before subdivision 2 of section 722 of the former Penal Law was replaced by the present section 240.20 (People v Szepansky, 25 Misc 2d 239 [Gabrielli, J.]; see, also, People v Chesnick, 302 NY 58, 60-61). The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem. In deciding whether an act carries public ramifications, courts are constrained to assess the nature and number of those attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode under scrutiny (see People v Phillips, 245 NY 401, 402-403; People v Canner, 88 Misc 2d 85, affd on opn below 40 NY2d 886).
In the case before us, it is undisputed that Munafo’s actions were undertaken in broad daylight on a secluded stretch of his own property far removed from any public thoroughfare or business or residential area. Relative to the *332 space, those present were small in number. Nor was there anything to indicate that the defendant attempted in any way to incite or involve the spectators, all of whom were present before the confrontation. In fact not a single bypasser was attracted to the scene, and of those present, there was no proof that anyone aided or abetted the defendant or was encouraged to do so. In short, viewing the record, in light of the conviction, most favorably to the People, the differences between the authority and the defendant were confined to these two disputants rather than spread to the public.
Moreover, since the accusatory instrument pointed to subdivision 5 as an implicated portion of section 240.20, we observe that, especially on this private way, there hardly could be, and definitely was not, any obstruction of passage, vehicular or pedestrian, of the public at large (cf. People v Carcel, 3 NY2d 327, 333). Nor is defendant’s mere disobedience of the police order to move culpable since he was not part of a "congregate[d]” crowd directed to "disperse” (subd 6).
In all, a case of disorderly conduct was not made out beyond a reasonable doubt (People v Jemzura, 29 NY2d 590).
Accordingly, the order of the County Court, St. Lawrence County, should be reversed and the informations dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order reversed and the informations dismissed.

 Subdivision 5 of section 140.00 of the Penal Law reads as follows: " 'Enter or remain unlawfully.’ A person 'enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privilege unless notice against trespass is personally communicated to him by the owner of such land or other authorized person, or unless such notice is given by posting in a conspicuous manner.”