*163 OPINION OF THE COURT
Laura E. Drager, J.
Defendant was charged in a desk appearance ticket with disorderly conduct (Penal Law § 240.20 [5], [6]) as a result of her behavior while demonstrating in front of an abortion clinic. At the conclusion of a bench trial before this court defendant moved for dismissal on the grounds that a conviction here would violate defendant’s constitutional right of free speech. On consent of both parties, this court agreed to render its verdict and at the same time, if necessary, decision on defendant’s motion to set aside the verdict. Thus, the issues before the court are (1) have the People proven defendant’s guilt beyond a reasonable doubt and (2) if defendant is found guilty, would a conviction here violate defendant’s constitutional right of free speech.
For the reasons set forth below, the court finds defendant guilty of disorderly conduct and further finds no violation of her constitutional rights. Defendant’s motion to set aside the verdict, therefore, is denied.
FINDINGS OF FACT
Police Officer Michael Bulger testified that on February 26, 1987 at approximately 10:50 a.m. he arrested defendant in front "of 40 East 30th Street in New York County on the charge of disorderly conduct. For several months prior to that date a group of individuals, including the defendant, had engaged in antiabortion demonstrations in front of that building, in which an abortion clinic and a kidney dialysis center are located. Often more than one person engaged in the demonstration. On this occasion, defendant demonstrated alone (a second demonstrator left the scene well before defendant’s arrest). As in the past, on February 26, 1987, the police had set up two police barriers in front of and approximately six feet from the entrance to the building. The barriers were of the kind typically used by the police on city streets. The police told the demonstrators to stand behind the barriers to allow the free flow of pedestrian traffic and maintain a clear entrance to the building.
On the date in question, Officer Bulger testified that he ordered the defendant to stand behind the barriers. Officer Bulger stated that the defendant was free to say whatever she wanted to say and could hand out literature to passersby from *164 behind these barriers. There was a regular flow of 20 to 30 pedestrians on the block at any given time.
Contrary to Officer Bulger’s instructions, the defendant refused to stay behind the barriers. The officer observed the defendant follow pedestrians as they went in and out of the building. In particular, she approached young women and would stand in front of them blocking their pathway while speaking to them. If a pedestrian tried to walk around her, the defendant would continue to talk to and walk with the pedestrian, blocking the pedestrian’s path. The defendant would also try to hand pamphlets to the pedestrian.
By walking around the defendant, a pedestrian was able to continue on her way, though the defendant would continue to talk to and walk directly next to the pedestrian. The defendant would continue with the pedestrian into the doorway of the building. On two occasions, the officer observed the defendant actually block the threshold of the door, preventing pedestrians from entering the building until the defendant moved.
In some instances, the police officer overheard the conversation between the defendant and pedestrians. On several occasions when the defendant confronted women passersby, attempting to hand out pamphlets, the officer overheard those women respond with words to the effect of: "Leave me alone; you don’t know what I’m going through”. The police department also received numerous complaints that day from the abortion clinic regarding the defendant’s conduct.
The police officer observed defendant engage in this conduct for 2 Vi hours. He asked her approximately 10 times to move behind the barriers.
Initially, the police issued a summons to defendant for disorderly conduct. Immediately after receiving the summons the defendant returned to the site of the clinic and resumed engaging in the same conduct. Her repetitive actions then led to her arrest for disorderly conduct and the issuance of the desk appearance ticket.
The defendant testified at trial, acknowledging that after receiving the summons at approximately 9:00 A.M., she returned to the site of the clinic. She admitted to remaining in front of the barriers so that she could approach pedestrians. It was her testimony that not only did she demonstrate against abortion but she also sought to counsel individuals who were *165 about to have abortions. She claimed that she was of the belief that if she was the sole demonstrator, she did not have to remain behind the barriers. However, she acknowledged that the police told her to stay behind the barriers, and that despite this instruction she continued to approach pedestrians to hand out literature and talk to them. The literature she distributed was an antiabortion pamphlet prepared by the New York Archdiocese.
i
Defendant has been charged with violating two subdivisions of the disorderly conduct statute.
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"5. He obstructs vehicular or pedestrian traffic; or
"6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse”[1] (Penal Law § 240.20 [5], [6]).
The evidence before this court cannot sustain a conviction under subdivision (6) of the statute. To be guilty under this provision, a person must be congregating with others at the time the police order to disperse is ignored. (See, People v Carcel, 3 NY2d 327 [1957]; People v Munafo, 50 NY2d 326 [1980].) In this case, defendant was the sole demonstrator at the time of her arrest. Therefore, subdivision (6) is inapplicable.
Congregating with others is not, however, a requirement under subdivision (5) of the statute. The question, then, is whether defendant’s conduct constituted obstruction of pedestrian traffic. The Court of Appeals has rendered a number of decisions on the disorderly conduct statute. Although no case is directly on point, one can glean from several of that court’s decisions, factors to consider in determining the issue before this court.
*166 In People v Nixon (248 NY 182 [1928]),* [2] over 100 individuals, apparently labor demonstrators, were observed by the police quietly parading up and down one block, four abreast. The demonstrators took up half the width of the sidewalk, necessitating some pedestrians to enter the roadway. Several of the demonstrators were convicted of disorderly conduct. The Court of Appeals reversed one of the convictions and upheld four others.
The court found that merely congregating in a group, causing some inconvenience to others, is not enough to establish guilt. "In the absence of evidence that the defendants caused substantial annoyance to others, or persisted in their conduct after protest from others or warning from a police officer, we find the evidence insufficient to sustain the conviction of the defendants in this case.” (People v Nixon, 248 NY, supra, at 188.)
However, the court upheld the convictions where the defendants continued demonstrating after receiving a police order to disperse. In those cases, the court noted: "there is evidence that before the defendants were arrested they were warned by police officers that they must not persist in marching up and down the street in large groups. Police officers are guardians of the public order. Their duty is not merely to arrest offenders but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions. Present at the point where the defendants were congregating they might early sense the possibility of disorder. Even a protest from pedestrians who were annoyed by the defendants’ conduct might be a significant element in determining whether persistence in such conduct was wrongful * * * Refusal to heed the warning so given; persistence in parading the street in groups thereafter, is, perhaps, so significant of a contumacious disregard of the rights of others that it supports the finding of guilt”[3] *56(People v Nixon, 248 NY, supra, at 188-189).
*167 The court applied the same reasoning in People v Carcel (3 NY2d 327 [1957], supra). There, the two defendants demonstrated in front of the United Nations building, marching back and forth in front of an entrance. One of the defendants carried a placard and the other handed out literature to passersby. The defendants claimed that they never blocked the entrance. In setting aside the verdict, the court stated: "[T]he courts have indicated that something more then a mere inconvenience of pedestrians is required to support a conviction * * * There is absolutely no showing here that defendants caused any serious annoyance to pedestrians or that their manner was threatening or abusive” (People v Carcel, 3 NY2d, supra, at 332).
From these cases it is evident that a court must consider the effect of a defendant’s conduct on others and whether defendant persisted in such conduct even after a police warning to desist.
In a different vein, the Court of Appeals has also expressed concern with whether defendant’s conduct, although not in fact creating disorder, nonetheless created a risk that disorder might occur. (See, People v Todaro, 26 NY2d 325 [1970].) In that case, a police officer observed defendant with three companions congregating on 42nd Street and 7th Avenue for a period of time. Twice the officer told the group to move on. When the officer told the group to move a third time, the defendant responded "you can’t tell us to f-g move.” (Supra, at 327.) He was arrested at that point for disorderly conduct. In upholding the conviction, the court stated: "The circumstances present here do not indicate any arbitrariness on the part of the police officer, charged as he was with maintaining public order on one of the busiest street corners in the world. Moreover, appellant’s emphasis on the contention that the fact of disorder was not established, to the exclusion of the risk that it might come to pass, ignores the very terms of the statute itself. On this record, the trial court could well have found beyond a reasonable doubt that the appellant was aware of and consciously disregarded a substantial and unjustifiable risk that 'public inconvenience, annoyance or alarm’ might result from his use of clearly 'abusive and obscene language’ in response to the officer’s repeated *168 requests to move on and his refusal to comply with such requests.” (People v Todaro, 26 NY2d, at 329; emphasis in original.)
Similarly, in People v Kennedy (19 NY2d 761 [1967]) the defendant was convicted of disorderly conduct for disobeying a police order to stay behind a barrier at the site of an underground fire. The court found that defendant’s obstruction of firefighters and police officers posed a serious hazard to the public. The court specifically noted that it was enough that disorder was threatened by defendant’s conduct, even if no disorder actually occurred.
Thus a court must also consider whether defendant’s conduct creates at least a risk of the occurrence of disorder.
The Court of Appeals has also found that the conduct in issue must occur in a public area. In People v Munafo (50 NY2d 326 [1980], supra), the court reversed a conviction where the defendant engaged in disruptive conduct on his own isolated property: "The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem. In deciding whether an act carries public ramifications, courts are constrained to assess the nature and number of those attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode under scrutiny”. (Supra, at 331.)
In sum, factors to be considered in determining if a defendant’s conduct constitutes disorderly conduct in a case such as the one before this court include: (1) to what extent did defendant’s conduct annoy others; (2) did the defendant persist in the conduct after warnings by others or the police; (3) did defendant’s conduct create at least the risk that disorder might result; and (4) did defendant’s conduct occur in a public location.
Applying those factors to the case at hand, this court finds the defendant guilty of disorderly conduct.
The police officer’s testimony, which this court found credible, established that defendant’s conduct caused substantial annoyance to others. The police officer overheard some comments by pedestrians suggesting annoyance at defendant’s actions. Her conduct also led to numerous complaints by the abortion clinic itself. The defendant at times actually blocked the entrance to the doorway thereby impeding pedestrian *169 movement. She refused 10 times to obey the police officer’s reasonable order to move behind the barriers.
Defendant’s actions, which occurred on a busy public sidewalk, were properly perceived by the police as annoying to others and as creating the risk that public disorder might occur. Abortion is an emotionally charged issue. Even though acting alone, defendant’s conduct could well have led to a serious conflict with a passerby who held opposing views from those of defendant. Indeed, the likelihood of such a conflict was not remote since defendant was approaching women who might that very day be having an abortion. The police acted properly in trying to prevent the occurrence of such disorder. The arrest here occurred only after repeated warnings which defendant admittedly chose to ignore and after the less intrusive action of the issuance of a summons.
For all of these reasons, and in light of the factors set forth above, this court finds defendant guilty of disorderly conduct.
II
Defendant next argues that the conviction must be set aside as violative of her First Amendment right of free speech. Specifically, she argues that both the police regulation of her conduct and the application of the disorderly conduct statute to the facts here violate her First Amendment rights. Defendant’s argument cannot prevail.
A certain tension exits between the government’s need to regulate the use of city streets to assure the safety and convenience of the public, and the constitutional right of free speech. (Cox v Louisiana, 379 US 536, 554 [1965].) Any limitation of free speech on city sidewalks must be sharply restricted to those regulations necessary to serve a compelling State interest. (Grayned v City of Rockford, 408 US 104, 115 [1972]; Olivieri v Ward, 801 F2d 602, 605 [1986].) Yet, the First Amendment does not guarantee an absolute right to anyone to express his or her view "any place, at any time, and in any way”. (Olivieri v Ward, supra, at 605, citing Heffron v International Socy. For Krishna Consciousness, 452 US 640, 647 [1981]; Adderley v Florida, 385 US 39, 47-48 [1966].) "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that anyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining *170 public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection.” (Cox v Louisiana, supra, at 554.)
Reasonable "time, place and manner” regulations may be necessary to further significant governmental interests and are allowed. (Grayned v City of Rockford, supra, 408 US, at 115.) "The well-established tests for assessing the validity of such a restriction require that it (1) be content-neutral, (2) be narrowly tailored to meet a significant governmental interest, and (3) leave open ample alternative means of communication.” (Olivieri v Ward, supra, 801 F2d, at 605.)
The requirement of having people demonstrate or picket behind a barrier has long been recognized as a reasonable regulation by the police and an acceptable limitation on First Amendment rights, provided the three prongs of the above-cited test are met. (See, Olivieri v Ward, supra [demonstrations in front of St. Patrick’s Cathedral during the Gay Pride Parade]; People v Bush, 39 NY2d 529 [1976] [labor picketing in a barricaded area of a parking lot].)
In the case before this court, the requirement that defendant demonstrate from behind a barrier in front of the entrance to the clinic was a reasonable restriction that met the requirements of the three-prong test and did not violate defendant’s constitutional rights. Defendant was free to say whatever she wanted to say from behind the barrier and could directly address, counsel and hand out literature to any passerby. The limitation on her movement was kept to an absolute minimum, merely enough to regulate the safety of the public on the sidewalk. When defendant, of her own volition, chose to ignore this reasonable police regulation, she left herself open to the possibility of criminal prosecution.
Defendant’s reliance on Parkmed Co. v Pro-Life Counseling (91 AD2d 551 [1st Dept 1982]) and O.B.G.Y.N. Assns. v Birthright of Brooklyn & Queens (64 AD2d 894 [2d Dept 1978]) is misplaced. In both cases, each of which concerned demonstrations and counseling in front of abortion clinics, the court upheld injunctive relief limiting the demonstrators’ activities. *171 Both courts specifically prohibited the demonstrators from blocking ingress and egress to the clinic. In Parkmed Co., the court specifically prohibited the demonstrators from harassing passersby.
In the case before this court, where the defendant had displayed a tendency both to block the entrance to the clinic and to harass individuals, the police merely sought to prevent such conduct by requiring the defendant to speak from behind police barriers. This requirement in no way affected the content of defendant’s speech or her ability to be heard by those individuals she sought to influence. Neither this minimal restriction on defendant’s conduct, nor the resulting prosecution and conviction for disorderly conduct arising from her refusal to comply with this restriction, violated defendant’s constitutional right of free speech.

. The Court of Appeals has held that when a defendant is charged with violating a specific subdivision of the disorderly conduct statute, a judgment of conviction will be sustained if the evidence establishes a violation of any subdivision of the statute. (See, People v Carcel, 3 NY2d 327 [1957]; People v Munafo, 50 NY2d 326 [1980].) Under the facts before this court, however, no other subdivision is applicable.

. Although this case was decided under section 722 of the former Penal Law, its holding is still applicable. The defendants in People v Nixon (248 NY 182) were charged with using threatening, abusive and insulting behavior by obstructing the sidewalk. This charge readily applies to subdivision (5) of the present disorderly conduct statute.

. It is significant to note that the defendants in the People v Nixon case (248 NY 182) were not charged with the predecessor provision to subdivision (6) of the present disorderly conduct statute. Thus the court was not basing its decision on the fact that the defendants while congregating violated a police order to disperse; rather, the decision was based on the fact that the *167 defendants’ conduct demonstrated a disregard of the rights of others, which the police sought to protect by ordering the demonstrators to disperse.