■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DARRELL JONES, Respondent.—Order of the Supreme Court, New York County (Angela Mazzarelli, J.), entered on January

8, 1992, which granted defendant's motion to set aside a jury verdict convicting him of robbery in the second degree, is unanimously reversed on the law, the motion denied and the jury verdict reinstated.

On the morning of April 10, 1991, the complainant was in the subway station at Roosevelt Island when she was grabbed around the neck from behind by a man, later identified as defendant, who then stepped in front of her, snatched her shoulder bag and fled. A Roosevelt Island security guard, Filberto Perez, observed defendant, sweating profusely and running out of the subway station, tuck an object under his sweatshirt. The victim followed defendant out of the station. Noticing Perez, she approached him and explained that she had just been robbed. The complainant pointed in the direction of defendant. Perez, after identifying himself, told defendant to stop, but defendant hastened off with Perez in pursuit. While he was chasing defendant, Perez saw defendant remove money from a wallet that he was holding and toss the wallet into some bushes. Defendant was able to ascend a ramp and board a waiting bus before he was apprehended by Perez and two other security personnel and returned to the subway station where he was identified by the victim. Her wallet was retrieved from the bushes and handed over to a police officer. Defendant was taken to the precinct house, and $35, the exact amount that the complainant had had in her wallet when she was robbed, was recovered from him.

Officer James Gratta stated at trial that he had arrived at the subway station at approximately 6:30 A.M. in response to a radio call. There, Perez turned defendant over to him. He put defendant under arrest, frisked the outside of his clothing and placed him in a police vehicle. Although there was no money in the wallet, the officer was informed by Perez that the latter had observed defendant rummaging through the wallet and take something out of it prior to disposing of it in the bushes. Officer Gratta also spoke with the victim, noticing that the middle finger of her left hand was broken and that she was bleeding. She gave her pocketbook, which had a broken strap, to the officer. The complainant positively identified defendant in court as the perpetrator, and Perez identified him as the person whom he had seen leaving the station, whom he had pursued and who had discarded the victim's wallet. Officer Gratta also made an in-court identification of defendant.

The jury found defendant guilty of robbery in the second degree. A month later, his attorney moved to vacate the verdict pursuant to CPL 330.30 (1) authorizing a court to set

aside or modify a verdict based upon "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court." Specifically, counsel urged that the defense had been unfairly surprised when Officer Gratta gave testimony that was inconsistent with certain disclosure made by the People during pretrial discovery. Defendant moved, *pro se,* to vacate the verdict, claiming that it was against the weight of the evidence and that his identification had not been established. In that regard, it should be noted that the proof of defendant's guilt was overwhelming and that his identification was amply demonstrated. However, the court was sufficiently persuaded by counsel's argument to grant vacatur on the ground of unfair surprise.

The complainant testified that when her wallet was stolen, it contained bills in the denomination of $20, $10 and $5, for a total of $35. Notwithstanding that the prosecution had given the defense pretrial notice that no property taken from the victim was found in defendant's possession, Officer Gratta asserted on the stand that he removed $35 from defendant's person at the precinct in the same type of bills as described by the complainant. He first testified to this effect during cross-examination and again on redirect. Defendant's lawyer made no comment at the time of the supposed inconsistency. The District Attorney subsequently stated that she initially became aware on the morning of the trial that the officer had recovered money from defendant, but, since she did not intend to elicit this information on direct examination, she discerned no need to disclose the matter. Not until the summations had been completed did defense counsel ask that the court instruct the jury that "they might not conclude that in view of the fact that the People had not informed the defense that the money had been recovered from defendant's person, the defendant was in possession of the money and they may not draw any inference from any testimony that defendant had any money and they may not consider any testimony that the defendant had the money." The court denied the request to charge, as well as the defense attorney's ensuing motion for a mistrial.

Following the charge to the jury, defendant's lawyer advised the court that his notes reflected that it had first come to his attention during Perez's testimony that money had been discovered on defendant's person. Yet he conceded that he had failed to apprise the court of the discrepancy. In the course of deliberations, the jury sought a readback of the testimony of

both the victim and Perez, and this was so ordered. After a second note was received concerning Officer Gratta's testimony, defense counsel renewed his application that the jury be instructed to disregard all evidence relating to the recovery of the money or that defendant had taken any money from the wallet. In response, the prosecutor stated that it could not have been a surprise to the defense that money had been found on defendant since that had been divulged in the voluntary disclosure form and the vouchers. She explained that Officer Gratta had told her for the first time just before he took the stand that he recalled recovering money from defendant at the precinct house. She also denied any advance knowledge that Perez would assert that he had seen defendant remove money from the wallet, and she rejected responsibility for his testimony.

Nonetheless, despite once more denying the defense motion, the court did grant the subsequent motion under CPL 330.30 (1) to vacate the verdict. According to the court, "[a]lthough it may be true that some of the information provided by the prosecutor was beyond the scope of discovery, fundamental concepts of fairness require that the defense be entitled to rely on the information disclosed unless the prosecution has amended its previous answers. The duty to disclose is ongoing." The court acknowledged that "what occurred here was not a *Rosario* or *Brady* violation", but it was "still obliged to somehow remedy the prejudice to defendant" that was created when defendant's "own lawyer brought out very damaging evidence during the cross-examination of Gratta which contradicted the People's answers during discovery." The court concluded by declaring that its own failure to fashion an appropriate sanction or remedy constitutes the sort of error contemplated by CPL 330.30 (1).

The Court of Appeals in *People v Carter* (63 NY2d 530), in discussing CPL 330.30, explained that the power of a Trial Judge to set aside a guilty verdict is far more limited than the authority of an intermediate appellate court, which may determine not only questions of law but issues of fact and also may reverse a judgment as a matter of discretion in the interest of justice when such is appropriate. In addition, the Court of Appeals noted, "Trial Judges have no such power. Nor are they authorized to set aside a verdict as against the weight of the evidence", in contrast to an intermediate appellate court, which is statutorily empowered to do so *(People v Carter, supra,* at 536; CPL 470.15 [5]). As the Court stated therein, "[t]he power granted a Trial Judge by CPL 330.30

(subd 1) to set aside a verdict when reversal as a matter of law by an appellate court would be required is, as concerns proof of guilt, therefore, normally limited to a determination that the trial evidence was not legally sufficient to establish the defendant's guilt of an offense of which he was convicted (CPL 470.15, subd 4, par [b])" *(supra,* at 536; *see also, People v Brown,* 141 AD2d 657).

Thus, if a defendant, as herein, fails to raise in a timely manner that he was surprised and prejudiced by certain testimony, a post-summation claim based on that theory is not preserved for appellate review and does not constitute support for reversal as a matter of law (CPL 470.05 [2]; *see, People v Bynum,* 70 NY2d 858; *People v Udzinski,* 146 AD2d 245, *lv denied* 74 NY2d 853). Moreover, "[a] postverdict motion made pursuant to CPL 330.30 is not, by itself, ordinarily sufficient to preserve a 'question of law' within the meaning of CPL 470.05 (2)" *(People v Padro,* 75 NY2d 820, 821).

In any event, the record does not demonstrate that defendant was, in fact, "surprised". The complainant, who testified first, stated that her wallet contained one $20 bill, one $10 bill and one $5 bill. When her pocketbook was later returned to her, the wallet and the money were missing. She handed the pocketbook to Officer Gratta. Perez then asserted that he observed defendant remove money from the wallet before discarding it at a location where it was ultimately discovered. At this point, defendant's lawyer, by his own admission in court, realized that the money was found on defendant's person. On direct examination, Officer Gratta reinforced that belief when he remarked that the wallet was empty when he obtained it from Perez. Further, pretrial discovery revealed that the wallet and the money had been vouchered and that neither the pocketbook nor wallet had been recovered from defendant's person. Accordingly, it would have been logical to assume that defendant had the money; certainly, there was nothing in the pretrial disclosure material which would have led to any other conclusion. As for the court's failure to instruct the jury in the manner requested by counsel, the error, if any, was harmless in that, considering the overwhelming nature of the evidence, there is no reasonable possibility that it could have contributed to defendant's conviction *(People v Harris,* 80 NY2d 796, 798). Therefore, the trial court should not have granted defendant's motion to vacate, and the conviction should be reinstated. Concur—Milonas, J. P., Rosenberger, Ross and Asch, JJ.