OPINION OF THE COURT
Harvey Glasser, J.
On March 30, 1994, a bench trial was held before this court in which defendant Kevin Carter was charged with two counts of disorderly conduct (Penal Law § 240.20 [1], [5]). The charges arose from an incident which occurred at approximately 6:40 p.m., on November 29, 1993, on Eleventh Avenue between *644 West 27th and 28th Streets.[1] The defendant had been arguing in the street with a woman when the police attempted to terminate the confrontation and force the parties to disperse. The defendant failed to cooperate and was arrested.
After trial, the defendant was acquitted of Penal Law § 240.20 (1) and convicted of Penal Law § 240.20 (5). The defendant now moves to set aside the verdict on the grounds that the verdict was against the weight of the evidence and the evidence was insufficient as a matter of law to prove the defendant’s guilt beyond a reasonable doubt.
CPL 330.30, which specifies the grounds for granting a motion to set aside a verdict, provides, in relevant part:
"At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:
"1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court”.[2]
Thus, the power of a Trial Judge to set aside a verdict is much more limited than that of an intermediate appellate court, which is authorized to determine issues of fact, as well as questions of law, to reverse or modify the judgment when the verdict is against the weight of the evidence, and to reverse as a matter of discretion in the interest of justice. (People v Carter, 63 NY2d 530, 536 [1984]; People v Jones, 188 AD2d 331, 334-335 [1st Dept 1992].) "A Trial Judge who has rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his factual *645 determination * * * [H]e is without authority to reassess the facts and change a guilty verdict to not guilty.” (People v Carter, 63 NY2d, at 533, supra.) Thus, this court can only set aside a conviction if it was based upon evidence "legally insufficient to support the verdict”. (People v Brown, 141 AD2d 657 [2d Dept 1988].)
Penal Law § 240.20 (5) provides that
"[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"[h]e obstructs vehicular or pedestrian traffic”.
The proscribed disruptive behavior must "be of public rather than individual dimension” (People v Munafo, 50 NY2d 326, 331 [1980]). "In deciding whether an act carries public ramifications, courts are constrained to assess the nature and number of those attracted, taking into account the surrounding circumstances, including * * * the time and the place of the episode under scrutiny”. (Supra, at 331 [citation omitted].)
The testimony of the two police officers, Officers Pinero and Broadus, whom this court found to be highly credible, was that on November 29, 1993 they were assigned to the warrant squad, specifically to apprehend defendants who had been arrested for prostitution-related offenses and had failed to appear in court. As Officer Pinero drove west on West 27th Street at approximately 6:40 p.m., upon reaching the intersection of Eleventh Avenue, he observed a group of people on the east side of Eleventh Avenue pointing to the west side of the street, drawing the officers’ attention to the defendant and a woman who were fighting. Officer Broadus heard a voice yell out that a woman was being beaten. On the southeast corner of the intersection, a maintenance crew employed by the Board of Education was watching what was going on.
The officers drove their police car up Eleventh Avenue, opposite the traffic flow, to where the defendant and the woman were arguing. Officer Pinero saw the defendant slap the woman "about twice.” The officers separated the parties. Officer Broadus asked the woman, who was crying, if she wanted to press charges, but she declined. The defendant cursed at the officers and told them to mind their own business.
The two were instructed to walk in opposite directions. The defendant began to walk toward the corner of 27th Street, yelling obscenities. The defendant entered the crosswalk and *646 stopped in the middle of the street, yelling and cursing. Officer Pinero instructed the defendant to keep walking, but the defendant remained in the middle of the street. Officer Pinero, with the assistance of Officer Broadus, arrested the defendant.
Officer Pinero testified that the area where the incident occurred has heavy vehicular traffic and rush hour continues until 7:30 p.m. Both officers testified that when the defendant stood in the intersection, refusing to move, traffic slowed almost to a halt, as the drivers observed what was taking place, many of them honking their horns and slowly driving around the defendant.
The defendant contends that the above facts are insufficient to constitute disorderly conduct because the blockage of vehicular traffic "must go on for an extended period of time,” whereas here there was only a "temporary inconvenience,” lasting a few seconds. Additionally, the defendant argues that he did not intend to cause public inconvenience, annoyance or alarm; his anger was directed at the police, not at passing motorists.
In Matter of Seymour v Seymour (56 Misc 2d 546 [Fam Ct, Tioga County 1968]), cited by the defendant, Mr. Seymour allegedly attempted to force his wife’s automobile off the road by swerving his automobile in front of hers and stopping perpendicular to the shoulder of the highway. The petition was ruled insufficient because the alleged conduct was of a private nature, whereas subdivision (5) of section 240.20 "relates to the blocking of highways or thoroughfares for extended periods of time to the public’s inconvenience.” (Supra, at 548.)
This court finds the holding in Seymour (supra) to be inapposite herein. Initially, it must be noted that the incident in Seymour occurred in Tioga County, a location presumably less travelled than the streets of New York City. Indeed, the petition therein did not even allege that there were any other vehicles in the vicinity when the incident occurred. In the instant matter, Eleventh Avenue was busy with much traffic.
More importantly, when defendant Carter stood in the middle of the intersection of Eleventh Avenue and 27th Street, the police could not be expected to just stand there watching helplessly, taking no action, and allowing the defendant to continue to endanger himself and cause an accident. Under such circumstances, it was necessary and appropriate for the officers to take swift action.
*647 People v Maher (137 Misc 2d 162 [Crim Ct, NY County 1987]) involved a protestor who blocked pedestrian traffic, who was also charged with violating Penal Law § 240.20 (5). The court held that the defendant was guilty of disorderly conduct when she refused to obey police directives to step behind police barriers because her conduct created a "risk that public disorder might occur.” (Supra, at 169.) The court reasoned that " '[p]olice officers are guardians of the public order. Their duty is not merely to arrest offenders but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions.’ ” (Supra, at 166.) Accordingly, the court "must consider the effect of a defendant’s conduct on others and whether defendant persisted in such conduct even after a police warning to desist.” (Supra, at 167.) Similarly, in the instant matter, Officer Pinero warned the defendant to step out of the roadway. When he failed to do so, it was appropriate for the officer to place him under arrest.[3]
The defendant’s argument that his actions and anger were directed at the police, not the public, similarly fails. Penal Law § 240.20 does not require an intent to cause public inconvenience, annoyance, or alarm; recklessly creating a risk thereof suffices. (People v Todaro, 26 NY2d 325, 329 [1970]; People v Maher, 137 Misc 2d, at 168, supra.) This court finds that by remaining in the street and yelling while vehicles were attempting to pass, the defendant recklessly created a risk of public inconvenience, annoyance or alarm.
Accordingly, the defendant’s motion to set aside the verdict is denied in all respects.

. The defendant was originally charged with disorderly conduct under Penal Law § 240.20 (3) and resisting arrest.

. The other two grounds for setting aside a verdict specified in CPL 330.30 are:
"2. That during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict; or
"3. That new evidence has been discovered since the trial which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.”
These grouinds are not pertinent herein.

. Although the defendant argued and cursed from the time he was first approached by the officers, he was not placed under arrest until he refused to leave the crosswalk. Thus, this does not appear to be a retaliatory arrest for a display of disrespect toward the officers.