OPINION OF THE COURT
Ellen Gesmer, J.
The defendant is charged with one count of unlawful assembly and one count of disorderly conduct, for gathering with others in a public park. Defendant moves to dismiss the misdemeanor information for facial insufficiency and for various other relief. In response, the People contend that the information is sufficient in all respects and oppose defendant’s motion. For the reasons set forth below, this court grants the defendant’s motion to dismiss both counts of the accusatory instrument on the ground of facial insufficiency.
Facial sufficiency is a nonwaivable, jurisdictional prerequisite to a misdemeanor prosecution. (People v Alejandro, 70 NY2d 133, 139 [1987]; People v Hall, 48 NY2d 927 [1979]; People v Case, 42 NY2d 98 [1977].) A misdemeanor information is sufficient on its face only if it contains nonhearsay factual allegations which, if true, establish every element of the offense and provide reasonable cause to believe the defendant committed the offense charged (CPL 100.15 [3]; 100.40 [1] [b], [c]; People v Casey, 95 NY2d 354, 360 [2000]; People v Dumas, 68 NY2d 729, 731 [1986]).
In the factual portion of the instant accusatory instrument, Police Officer Joseph Townsend states, in full:
“Deponent heard yelling and chanting when deponent was approaching the entrance of Riverside Park at the above location, a residential neighborhood and public place.
“Deponent further states that deponent entered said location, walked approximately thirty (30) yards to a large underpass, where deponent observed the defendants and approximately twenty five (25) separately charged defendants and five (5) unapprehended individuals inside Riverside Park at the above location, a public place. Deponent observed *673 the defendants and said others (i) jumping up and down, (ii) occupying approximately two hundred (200) square feet at the above location, (iii) pushing against each other, and (iv) loudly chanting, including chanting the letters ‘DDP’, which the deponent knows from deponent’s training and experience is a known chant for the gang ‘Dominicans Don’t Play.’ ”
The defendant is charged with violating Penal Law § 240.10, unlawful assembly. A person is guilty of unlawful assembly when
“he assembles with four or more other persons for the purpose of engaging or preparing to engage with them in tumultuous and violent conduct likely to cause public alarm, or when, being present at an assembly which either has or develops such purpose, he remains there with intent to advance that purpose.” (See Penal Law § 240.10.)
In order for the defendant to be liable under any of these criteria, he must have been part of a group which at some point had the purpose of engaging or preparing to engage in tumultuous and violent conduct likely to cause public alarm.[1]
The purpose of this statute, like that of its predecessors, is “the protection of the public peace.” (People v Most, 128 NY 108, 115 [1891].) Since the statute implicates the right of peaceful assembly, which is a fundamental constitutional right, it must be interpreted narrowly, so as to criminalize only “incitement to imminent lawless action.” (Brandenburg v Ohio, 395 US 444, 449 [1969]; US Const 1st Amend; see also People v Biltsted, 150 Misc 2d 872, 879-880 [Crim Ct, NY County 1991]; see also, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.10, at 342.) The statute must also be interpreted so as not to interfere with the constitutionally protected right to gather in public places.
“[T]he freedom to loiter for innocent purposes is part of the ‘liberty’ protected by the Due Process Clause of the Fourteenth Amendment . . . Indeed, it is apparent that an individual’s decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is ‘a part of our heritage,’ or the right *674 to move ‘to whatsoever place one’s own inclination may direct’ identified in Blackstone’s Commentaries.” (Chicago v Morales, 527 US 41, 53-54 [1999] [citations omitted].)
The information in this case alleges, quite simply, that defendant and a group of other young men were jumping up and down, jostling each other, and making noise.[2] There is no allegation that their conduct was violent or that anyone else was present in the park. Broadly speaking, the conduct of defendant and his companions is indistinguishable from the behavior of fans at a sports event or at an outdoor concert.
I now must consider whether defendant’s conduct, as alleged in the information, makes him subject to criminal liability under any of the criteria set forth in the statute, taking into account the constitutional limitations on the statute. The information does not allege anything about the purpose for which defendant and his companions gathered. Consequently, I must infer their purpose from the facts stated. Since their conduct as described was arguably tumultuous, I find that their purpose was to engage in tumultuous conduct. However, the statute requires that the group’s purpose be to engage in conduct which is both tumultuous and violent. But there are no facts stated in the information from which I can infer that the group’s purpose was to engage in violent conduct, since they were neither acting violently, nor making statements which incited violence. There are also no facts from which I can infer that their purpose was to cause “public alarm,” because there are no allegations that any members of the public were present; we know only that defendant, his companions and the arresting officer were present. The information does not allege either that there were passersby, or that a crowd gathered. Indeed, the court notes that on an evening in January, a park in New York is not likely to attract many passersby.
Similarly, there are no facts in the information from which the court could infer that defendant and his companions were “preparing” to engage in violent conduct. The information does not describe any weapons, nor does it describe any talk of plans being made. Finally, even if the information adequately showed that the group had the purpose of engaging in conduct likely to cause public alarm, it does not allege any specific conduct by the defendant from which it can be inferred that he had the intent *675 to further that purpose. Since the statute itself requires proof of defendant’s purpose, the information is not facially sufficient to allege a violation of Penal Law § 240.10.
The facts in this case are totally at odds with those in the only recent cases where the Appellate Division for this Department has sustained convictions under this statute.[3] In Matter of Donovan B. (278 AD2d 95 [1st Dept 2000]), the Court sustained a conviction under this statute where defendant, wearing gang colors, was engaged in a fist fight with an individual wearing the colors of the rival gang, in close proximity to a battle between large groups of gang members. (See also Matter of Barbara M., 298 AD2d 288 [1st Dept 2002]; Matter of Danielle V., 293 AD2d 373 [1st Dept 2002].) In contrast, in this case, neither defendant nor any of his companions are alleged to have engaged in any kind of fight or other violent conduct.
The People argue that the group’s chanting of the phrase “DDF” which the officer claims is a known gang chant, brings the alleged conduct within the statute. However, the information does not allege that the words “DDP” were an “incitement to imminent lawless action,” or “fighting words” which may properly be regulated. (People v Dietze, 75 NY2d 47, 52 [1989]; Chaplinsky v New Hampshire, 315 US 568, 573 [1942].) At best, the information could be read to imply that the group’s loud chanting might be annoying to others. But the
“First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be ‘annoying’ to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct.” (Coates v Cincinnati, 402 US 611, 615 [1971].)
Moreover, if the unlawful assembly statute criminalized otherwise benign conduct when it is accompanied by the chanting of a gang name, then it would run afoul of the Constitution. (Chicago v Morales, 527 US at 62 [striking down Gang Congregation Ordinance as unconstitutional].) That was the conclusion reached in People v Lopez (2 Misc 3d 843, 846 [Crim Ct, Queens *676 County 2003]) in which the court dismissed a charge of unlawful assembly for facial insufficiency on facts similar to but less benign than those in this case. Specifically, in that case, the information alleged that the defendants were yelling obscene language and displaying gang gestures, and that their actions caused public annoyance and alarm among the numerous people present in the park. Nonetheless, the court held that
“[o]ther than words indicating disdain for another gang, or love for their own gang, there are no additional facts alleged which indicate that these expressions were likely to produce an imminent result . . . Without such allegations, the words and gestures in the instant information alone do not support the charge of unlawful assembly.” {Id. at 846.)
This court reaches the same conclusion. Accordingly, the defendant’s motion to dismiss count one for facial insufficiency is granted.
Turning to the second charge, that of disorderly conduct, the accusatory instrument must allege that defendant “engage[d] in fighting or in violent, tumultuous or threatening behavior” with the “intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.” {See Penal Law § 240.20 [1].) Therefore, the statute has two essential elements: conduct and intent.
To satisfy the statute, the proscribed conduct must be “of public rather than individual dimension,” which can be assessed by considering “the nature and number of those attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode under scrutiny.” (People v Munafo, 50 NY2d 326, 331 [1980].) Accordingly, a defendant cannot be guilty of breach of the peace if he “annoyed no one, disturbed no one, interfered with no one.” (People v Perry, 265 NY 362, 365 [1934].) In this case, although the information alleges that defendant acted in Riverside Park, a concededly public place, there are no allegations that anyone was present, other than defendant, his companions and the arresting officer. Therefore, there is no allegation that defendant annoyed, disturbed or interfered with any member of the public. For this reason alone, the information must fail.
Secondly, disorderly conduct statutes apply only where the offending conduct is “reinforced by a culpable mental state to create a public disturbance” (People v Tichenor, 89 NY2d 769, 775 *677 [1997]; see also Munafo, 50 NY2d at 331; People v Pritchard, 27 NY2d 246, 248 [majority op], 250 [Jasen, J., dissenting] [1970]). In the absence of an allegation of intent or recklessness, the information must be dismissed. (People v Tarka, 75 NY2d 996, 997 [1990].) The intent requirement must be met so that “no inadvertently disturbing act may be punished” (People v Bakolas, 59 NY2d 51, 54 [1983]; see also Tichenor, 89 NY2d 769, 776 [1997]). In order to accomplish this, the information must allege facts, either about the defendant’s conduct or about the surrounding circumstances, to support an inference that defendant possessed the requisite intent. (See People v Leiner, NYLJ, Oct. 15,1997, at 34, col 5 [App Term, 2d & 11th Jud Dists 1997], lv denied 91 NY2d 894 [1998].)
Here, the information is utterly devoid of such facts. It fails to allege that defendant’s conduct actually annoyed anyone, that defendant persisted in the conduct after warnings by the police or others or that his conduct created even a risk of disorder. (People v Maher, 137 Misc 2d 162, 168 [Crim Ct, NY County 1987], affd 142 Misc 2d 977 [1989], lv denied 74 NY2d 794 [1989]; see also Munafo, 50 NY2d at 331; People v Gonzalez-Muniz, 2001 NY Slip Op 40182[U] [Crim Ct, NY County 2001].) Indeed, there are no facts from which defendant’s intent can be determined. This failure too requires dismissal of this count.
Accordingly, both counts of the information are dismissed. In light of this disposition, the court need not address the remaining issues raised by the defendant.

. Such a provision requiring specific intent is almost certainly constitutionally required. (Cf. Virginia v Black, 538 US 343, 367 [2003] [statute permitting criminal conviction of person burning a cross is unconstitutional absent proof of specific intent to intimidate].)

. Defendant is 16 years old. In a related case before the court, the codefendants are 17 and 18 years old.

. Apart from these three cases, none of the departments of the Appellate Division has addressed this statute in the last 40 years, and the Court of Appeals has not discussed it in more than 50 years.