OPINION OF THE COURT
Ellen Gesmer, J.
This case represents another skirmish in the ongoing battle between the Police Department and the City’s bicyclists.[1] Defendants Amy Erickson, Paulette Giguere and Olga Mazurkiewicz are each charged with one count of disorderly conduct by obstructing vehicular or pedestrian traffic (Penal Law § 240.20 [5]) and one count of parading without a permit (Administrative Code of City of NY § 10-110) (the Parading Law). Defendant Robert Barrett is charged only with disorderly conduct. Each defendant moves for dismissal of all charges as facially insufficient and in the interest of justice. In addition, each defendant charged with parading without a permit challenges that local law as unconstitutional on its face.
The complaint against defendants Barrett and Erickson alleges that they were riding in a group of only four bicyclists. The use of the Parading Law to prosecute defendant Erickson is inconsistent with representations made by the People both in these cases and in previous cases that the Parading Law is used *931 only to prosecute groups of at least 20 cyclists.[2] Because the Parading Law regulates conduct protected by the First Amendment, its application to a small group, together with its imposition of strict liability on all participants, raises a concern that it inhibits the exercise of First Amendment rights and thus is unconstitutional. However, I need not reach that issue, since I find that the informations are facially insufficient to establish that defendants violated the Parading Law. Accordingly, the court dismisses all of the charges for parading without a permit. The court also dismisses the disorderly conduct charges against defendants Barrett, Erickson and Mazurkiewicz, but declines to dismiss the disorderly conduct charge against defendant Giguere because she is alleged to have run a red light at the same time as at least 50 other cyclists, which the court finds sufficient, for pleading purposes, to establish disorderly conduct.
The Allegations
In the complaint against defendant Erickson, Police Officer Thomas Lecaros states that, at about 8:55 p.m. on January 27, 2006, he observed defendants Erickson and Barrett, along with two other bicyclists,
“riding bicycles in a group of four riders, riding abreast, southbound in the right traffic lane on 7 Avenue between 45 and 44 Streets. Deponent states that as a result of the conduct of the above-described group, vehicular traffic at the above location was obstructed in that numerous vehicles, being unable to proceed in the right traffic lane, were forced to switch traffic lanes to avoid colliding with defendants. Deponent states that neither defendant nor the other bicyclists had a permit to parade at said location at that time.”
The complaint against defendant Barrett is identical except that the last sentence does not appear in the complaint against him.
The complaints against defendants Mazurkiewicz and Giguere allege that each of them was part of a group of 50 to 60 cyclists at about 7:50 p.m. on January 27, 2006 on Third Avenue near Thirteenth Street. As to defendant Mazurkiewicz, Police Officer Stephen Jendzo stated that he
*932 “observed the defendant riding on a bike parading upon the street at the above location, a public place, with at least fifty (50) other unapprehended bicyclists without a permit from the police commissioner. Deponent further states that deponent observed the defendant riding defendant’s bicycle side by side with said unapprehended bicyclists at a slow rate of speed and that as a result of the defendant’s conduct and conduct of said unapprehended bicyclists the flow of vehicular traffic was obstructed in that, vehicles were forced to drive at an extremely slow rate of speed on a public highway, to wit the above location.”
As to defendant Giguere, Police Officer Arthur Clarke stated
“that deponent observed the defendant riding on a bicycle parading upon the street at the above location, a public place, with at least fifty other bicyclists without a permit from the police commissioner. Deponent further states that deponent observed the defendant ride her bicycle at a slow rate of speed at the same time that other riders rode at a slow rate of speed through the intersection at the above location, thereby preventing vehicles and pedestrians from passing and moving forward in the street.
“Deponent further states that deponent observed the defendant riding at the above location, a public place, on her bicycle through a red light at the same time that the other said riders rode through said red light thereby preventing vehicles and pedestrians from passing and moving forward in the street.”
I. The Information is Not Facially Sufficient as to the Charge of Parading Without a Permit
In order to be facially sufficient, the factual portion of a misdemeanor information must allege facts of an evidentiary character supporting or tending to support the charges (CPL 100.15 [3]; 100.40 [1] [b], [c]; People v Casey, 95 NY2d 354, 360 [2000]; People v Dumas, 68 NY2d 729, 731 [1986]). In addition, the allegations of the factual part, together with any supporting depositions, must provide reasonable cause to believe that the defendant committed the offense charged (CPL 100.40 [1] [b]). Finally, nonhearsay allegations must establish, if true, a prima facie case; that is, they must show every element of the offense charged and the defendant’s commission of it (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133, 139 [1987]; People v Hall, 48 NY2d 927 [1979]; People v Case, 42 NY2d 98 [1977]).
*933 Section 10-110 (a) of the Administrative Code of the City of New York provides, in relevant part, that “[a] procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner.” Participation “in any procession, parade or race, for which a permit has not been issued when required by this section” is punishable by a fine of up to $25 or up to 10 days in jail or both (Administrative Code § 10-110 [c]). Defendants argue that the accusatory instrument fails to set forth facts establishing that they participated in a procession, parade or race for which a permit was required, and that a permit was not obtained. The court agrees.
A. Defendants Were Not Alleged to be Participating in an Event for Which a Permit Was Required
1. The Activity in Which Defendants Were Alleged to be Engaging Does Not Come Within the Language of Administrative Code § 10-110
The Administrative Code does not define the terms “procession, parade, or race.” The Police Department has issued rules defining a “parade or procession” as “any march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway” (NY City Police Dept Rules [38 RCNY] § 19-02 [a] [Rules]). Therefore, the court must decide whether the complaint adequately alleges that defendants were taking part in a “march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind.” In making that decision, the court must interpret the words of Administrative Code § 10-110, as defined by the Rules, “according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00).
The only activity named in either the Parading Law or the Rules which explicitly refers to bicycles is “bicycle race.” According to the dictionary, a “race” is a competition or contest of speed, as in running or riding.[3] None of the complaints before the court contain any allegations which state, or from which it can be inferred, that defendants were participating in a competitive event. Indeed, the complaints against defendants Giguere and Mazurkiewicz allege that they were riding at a “slow rate of speed,” which is the very antithesis of a race. The complaints against defendants Erickson and Barrett imply that they were *934 also riding slowly, since, otherwise, cars would not have had to switch traffic lanes to avoid hitting them. Therefore, I find that defendants were not participating in a race.
A “motorcade” is defined as a procession of motor vehicles and a “caravan” as “a group of vehicles proceeding or traveling together in a file.”[4] Under New York law, “vehicle” is expressly defined to exclude “devices moved by human power” (Vehicle and Traffic Law § 159). Since the defendants were all riding on bicycles operated by human power, they could not have formed a motorcade or caravan. The term “promenade” is equally inapplicable to defendants’ behavior, since it is defined as “[a] leisurely walk, especially one taken in a public place as a social activity.”[5] Therefore, I find that defendants were not participating in a motorcade, caravan or promenade.
That leaves open the question of whether defendants were participating in a “march.” A “march” is an “organized walk or procession by a group of people for a specific cause or issue.”[6] A “procession” is a “group of persons, vehicles, or objects moving along in an orderly, formal manner.”[7] Similarly, a parade is “[a]n organized public procession on a festive or ceremonial occasion.”[8] Thus, by definition, marches, parades and processions are organized and formal. Yet there are no facts alleged in any of the complaints against defendants that support a finding that they were participating in events that were either organized or formal. The only language in any of the complaints that suggests such a conclusion is the statement found in the complaints against defendants Giguere and Mazurkiewicz that they were each “riding on a bicycle parading upon the street.” However, that statement is purely conclusory and therefore is not sufficient to establish that defendants were participating in a parade (People v Dumas, 68 NY2d 729, 731 [1986]). Consequently, I find that the complaints have failed to allege that defendants were participating in a procession, parade, race, march, motorcade, caravan or promenade.
*935 Nor is the complaint saved by the catchall language in the Rules which defines “parade or procession” to include an “event of any kind” similar to a “march, motorcade, caravan, [or] promenade.” (38 RCNY 19-02 [a].) If that phrase were interpreted to include an event which is not a march, motorcade, caravan or promenade, then it would not give an individual fair notice of the type of conduct which is prohibited. Consequently, if I were to interpret that language to include an unorganized group of bicyclists, I would be violating “the general principle that penal statutes are to be interpreted according to the fair import of their terms so that penal responsibility is not extended beyond the fair scope of the statutory mandate” (People v Harper, 75 NY2d 313, 318 [1990]; Penal Law § 5.00). I decline to do so. There is nothing in Administrative Code § 10-110 or the Rules to alert the reasonable citizen that the Police Department requires four people bicycling together to obtain a permit, and, in the court’s opinion, nobody setting out to bicycle with three other people would think it was necessary to get a permit before doing so.
Indeed, it appears that the City itself would not have interpreted the Parading Law to apply to these defendants until a few years ago. From 1994 until 2004, the City did not take any steps to prosecute participants in the monthly Critical Mass bicycle rides under either the Parading Law or any other statute (Bray I, 346 F Supp 2d at 483). Although none of the instant defendants is alleged to have been participating in a Critical Mass ride, I can certainly infer that the City would not have applied Administrative Code § 10-110 to these defendants if it did not apply it to the Critical Mass riders.[9] Therefore, the fact that, between 1994 and 2004, the City itself would not have prosecuted these defendants under the Parading Law provides further evidence that defendants would not have had fair notice that their conduct was proscribed by the Parading Law.
Moreover, to interpret Administrative Code § 10-110 to include an event which is not specifically described in the statute would render it unconstitutionally vague.
*936 “To survive a vagueness challenge, a statute must ‘give the person of ordinary intelligence a reasonable opportunity to know what is prohibited’ and ‘provide explicit standards for those who apply [the statute].’ The degree of constitutional vagueness depends partially on the nature of the enactment. A stringent vagueness test applies to a law that interferes with the right of free speech” (Video Software Dealers Assn. v Webster, 968 F2d 684, 689-690 [8th Cir 1992] [citations omitted], quoting Grayned v City of Rockford, 408 US 104, 108 [1972], and citing Hoffman Estates v Flipside, Hoffman Estates, Inc., 455 US 489, 498 [1982]).
An interpretation which included defendants within the reach of Administrative Code § 10-110 solely because of the catchall language in the Rules would render criminal the otherwise legal activity of bicycling in the streets of New York City, without fair notice to bicyclists. Such an interpretation would render Administrative Code § 10-110 unconstitutionally vague.
Therefore, I find that defendants were not participating in the type of event for which a permit is required under the plain language of Administrative Code § 10-110 (see City of New York v Times’ Up, Inc., 11 Misc 3d 1052[A], 2006 NY Slip Op 50189[U], *10 [Sup Ct, NY County 2006] [concluding that Administrative Code § 10-110 is not applicable to Critical Mass riders]).
2. A Narrow Interpretation of Administrative Code § 10-110 is Necessary to Avoid Constitutional Doubts
The People argue that the language of Administrative Code § 10-110 should be read broadly enough to encompass defendants’ alleged conduct (Delle Cave affirmation ¶ 6; Perry affirmation ¶ 6). Defendants argue that the Parading Law is unconstitutional. Had I found that the complaints were facially sufficient to establish that defendants had violated Administrative Code § 10-110, then I would have to address defendants’ constitutional challenges to that section. For the reasons discussed below, I would be compelled to find that the Parading Law is unconstitutional. That provides a further impetus for interpreting the Parading Law narrowly and finding it inapplicable to defendants, as it is preferable to interpret a statute so as to avoid a finding of unconstitutionality (Matter of Cipolla v Golisano, 84 NY2d 450, 455 [1994]; see also Matter of Jacob, 86 NY2d 651, 667 [1995] [“Where the language of a statute is susceptible of two constructions, the courts will adopt that *937 which avoids injustice, hardship, constitutional doubts or other objectionable results”]).
Parading and other forms of public assembly are explicitly protected by the First Amendment. “The use of streets and other public places for the exercise of the right to free speech and peaceable assembly . . . has ‘from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens’ ” (People v Taub, 37 NY2d 530, 531-532 [1975], quoting Hague v Committee for Industrial Organization, 307 US 496, 515 [1939]; see also Hurley v Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc., 515 US 557, 568-569 [1995]). Cities nonetheless have a legitimate interest in regulating parades and other large gatherings which may disrupt traffic and create the potential for disorder (Cox v New Hampshire, 312 US 569, 574-576 [1941]; Rosen v Port of Portland, 641 F2d 1243, 1247 [9th Cir 1981]).
“The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend” (Cox v New Hampshire, 312 US at 574).
However, since prior restraints on First Amendment freedoms are strongly disfavored (Shuttlesworth v Birmingham, 394 US 147 [1969]; MacDonald v Safir, 206 F3d 183, 189 [2d Cir 2000]), the limits which are set on public gatherings must be defined “not by mere rationality of purpose but by a more stringent requirement of real necessity” (People v Taub, 37 NY2d at 532). Therefore, permit procedures may regulate the time, place and manner of public assemblies as long as the regulations meet constitutional standards (Thomas v Chicago Park Dist., 534 US 316, 323 [2002]). Such regulations will be subject to strict scrutiny if they are not content neutral (id. at 321).[10] Even content-neutral restrictions “may not delegate overly broad licensing discretion to a government official,” and must be “narrowly tailored to serve a significant governmental interest” (Forsyth County v Nationalist Movement, 505 US 123, 130 [1992]; see also People v Katz, 21 NY2d 132, 135 [1967]). The requirement of narrow tailoring requires that the permit scheme *938 may not “burden substantially more speech than is necessary to further the government’s legitimate interests” (Ward v Rock Against Racism, 491 US 781, 799 [1989]).
Applying these criteria, I would find, if compelled, that the parading without a permit law is constitutionally suspect because it requires that even small groups obtain permits, and because it applies strict liability.
a. Administrative Code § 10-110 Impermissibly Applies to Small Groups
The primary justification for requiring individuals to obtain permits before engaging in parades and other forms of expressive speech is the potential for disruption to the community when, for example, a large group gathers in a park or parades on a city street (Shuttlesworth v Birmingham, 394 US at 152; Cox v New Hampshire, 312 US at 576). Consequently, that justification disappears when individuals gather in small groups. Based on this principle, two recent decisions by two different Federal Courts of Appeals invalidated licensing regulations that applied to small groups as facially unconstitutional because they were not narrowly tailored (Santa Monica Food Not Bombs v City of Santa Monica, 450 F3d 1022 [9th Cir 2006]; American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d 600 [6th Cir 2005]). The Court of Appeals for the Ninth Circuit explained:
“[T]he significant governmental interest justifying the unusual step of requiring citizens to inform the government in advance of expressive activity has always been understood to arise only when large groups of people travel together on streets and sidewalks. Small groups, however, can also ‘march’ and ‘assemble’ for expressive purposes, and can do so without interfering with the free flow of traffic (except in the trivial respect that anyone walking on a public sidewalk or roadway takes up space and therefore prevents someone else from traveling precisely the same route). Without a provision limiting the permitting requirements to larger groups, or some other provision tailoring the regulation to events that realistically present serious traffic, safety, and competing use concerns, significantly beyond those presented on a daily basis by ordinary use of the streets and sidewalks, a permitting ordinance is insufficiently narrowly tailored to withstand time, place, and manner scrutiny.” (Santa *939 Monica Food Not Bombs v City of Santa Monica, 450 F3d at 1039 [citations omitted].)
Similarly, the Sixth Circuit invalidated a licensing ordinance which did not set a minimum size for the gatherings which required a permit, holding that it was overbroad because “under the Ordinance as written, any procession of people with a common purpose or goal, whether it be a small group of protestors or a group of senior citizens walking together to religious services, are conceivably required to obtain a permit” (American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d at 608). The court also found the ordinance not to be narrowly tailored because the city’s “significant interest in crowd and traffic control, property maintenance, and protection of the public welfare is not advanced by the application of the Ordinance to small groups” (id.; see also Cox v City of Charleston, SC, 416 F3d 281, 285 [4th Cir 2005] [invalidates parade ordinance that could require permit for groups of two]; Burk v Augusta-Richmond County, 365 F3d 1247 [11th Cir 2004] [invalidates content-based licensing scheme that applies to groups of as few as five participants]; Douglas v Brownell, 88 F3d 1511, 1524 [8th Cir 1996] [“applying the permit requirement to groups as small as ten persons compounds our conclusion that the parade permit ordinance is not narrowly tailored”]; Grossman v City of Portland, 33 F3d 1200, 1207 [9th Cir 1994] [“we simply cannot agree that six to eight people carrying signs in a public park constituted enough of a threat to the safety and convenience of park users — even the adherents of the Rose Festival — to justify the restrictions imposed on their speech here”]; Community for Creative Non-Violence v Turner, 893 F2d 1387, 1392 [DC Cir 1990] [invalidates statute that regulates expressive activities regardless of the size of the group]).
The local law before the court, Administrative Code § 10-110, sets no minimum size for a group for whom a permit is required (cf. Thomas v Chicago Park Dist., 534 US 316 [2002] [finding constitutional a licensing scheme which applied to groups of 50 or more]). This is one of the reasons that Justice Harris found the Parading Law unconstitutional in People v Bezjak (11 Misc 3d 424 [Crim Ct, NY County 2006]). In that case, Justice Harris stated:
“Improbable though it may be, under the City’s permit scheme as written, a person promenading, or two persons racing, are conceivably required to obtain a permit from the City of New York. Similarly, *940 a funeral procession, two or three cars displaying political posters traveling one behind the other, caravan style, or a small group of friends biking together could run afoul of the law” (id. at 433).
Although Justice Harris expressed a concern that his examples “may seem to strain a commonsense application of the permit scheme” (id.), his examples were not far-fetched but rather were prescient, since Ms. Erickson appears to have been part of “a small group of friends biking together.” Therefore, I join Justice Harris in finding that Administrative Code § 10-110 is constitutionally overbroad because it can be applied to small groups.
In People v Namer, Justice Jackson found the Parading Law constitutional in part because it did not “contain any ambiguous terminology which could be applicable to small innocuous groups” and provided “sufficient protection against small groups of pedestrians or cyclists being targeted” (People v Namer, 11 Misc 3d at 414-415). In reaching this result, Justice Jackson noted that the Police Department Rules define a demonstration as “a group activity including, but not limited to, a meeting, assembly, protest, rally or vigil, moving or otherwise, which involves the expression of views or grievances, involving more than 20 people” (NY City Police Dept Rules [38 RCNY] § 19-02 [d]). Although the word “demonstration” does not appear in Administrative Code § 10-110, Justice Jackson concluded that the words “demonstration” and “parade” are synonymous, and then grafted the numerical limitation on “demonstrations” found in the Rules onto the parades and processions for which a permit is required under the Administrative Code. I reject this conclusion for two reasons. First, if the drafters of the Rules had intended to define a parade as a demonstration, they could have easily done so. Instead, they provided different definitions for “parade or procession” and “demonstration” (see City of New York v Times’ Up, Inc., 11 Misc 3d 1052[A], 2006 NY Slip Op 50189[U], *10; People v Bezjak, 11 Misc 3d at 432 n 4). Second, the decision by the police to arrest defendant Erickson, and the decision by the People to prosecute her for violating Administrative Code § 10-110 by bicycling through the Theatre District with three other people, demonstrate that the People have not consistently adhered to their representation that permits are required only for groups of 20 or more (see also Bezjak, 11 Misc 3d at 433).
Therefore, I find that the Parading Law, as written, provides no protection against its application to small, innocuous groups. *941 Accordingly, I find that it is not narrowly tailored, which would require a finding that it is unconstitutional,
b. Administrative Code § 10-110 Improperly Applies Strict Liability
Under Administrative Code § 10-110, any person who participates in a permitless parade, procession or race may be arrested, and, if convicted, fined $25 or imprisoned up to 10 days or both. Thus, the Parading Law imposes strict liability on all participants, regardless of whether they knew that the event lacked a permit (Penal Law § 15.10). Although New York law generally presumes that criminal statutes require proof of a culpable mental state (Penal Law § 15.15), the People argue that the Parading Law does not require a culpable mental state. Rather, they argue that an information is sufficient to allege a violation of the Parading Law if it shows that the defendant engaged in an event which required a permit under Administrative Code § 10-110, that the event took place on a public street, and that there was no permit (see, e.g. Perry affirmation ¶¶ 3-4). Therefore, the Parading Law would, for example, criminalize the conduct equally of the organizer of a parade who chose not to seek a permit, and the individual who joined a parade at the last minute, mistakenly believing that the event had a permit. Indeed, an individual would be criminally liable under the Parading Law even if he had been incorrectly informed by an event organizer that the event had a permit, since mistake of fact is not a defense to a criminal statute that imposes strict liability (Penal Law § 15.20).
Statutes creating strict liability are disfavored in the criminal law (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 15; American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d at 610). They are found most commonly in regulatory schemes, such as those that regulate motor vehicles, commercial goods and food distribution, and in other statutes that are designed to protect public health and safety (Smith v California, 361 US 147 [1959]; see, e.g. Vehicle and Traffic Law § 509 [a] [driving without a license]; § 1192 [2] [driving while intoxicated]; Penal Law § 270.00 [unlawfully dealing with fireworks]; Alcoholic Beverage Control Law § 64-b [1] [unlicensed sale of alcohol]). However, strict liability statutes that discourage the exercise of free speech are unconstitutional (American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d at 611; Smith v California, 361 US at 155 [1960]; cf. New York v Ferber, 458 *942 US 747, 765 [1982]; Ginsberg v New York, 390 US 629, 643 [1968] [approves statute which prohibits only sale of obscene materials to minors made “knowingly”]).
As an initial matter, the fact that Administrative Code § 10-110 is a violation rather than a crime does not foreclose consideration of this issue (cf. People v Namer, 11 Misc 3d at 415). Violation of Administrative Code § 10-110 can still lead to imprisonment of up to 10 days and a fine of $25 or both. In any event, what matters is not the technical categorization of the offense, but whether its enforcement chills free speech (see Video Software Dealers Assn. v Webster, 968 F2d 684, 690 [8th Cir 1992]). Therefore, I turn to consider that issue.
In Smith v California, the Supreme Court invalidated a statute which imposed strict criminal liability on a bookseller for selling obscene material, holding:
“There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller. By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public’s access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature” (Smith v California, 361 US at 152-153).
Similarly, in American-Arab Anti-Discrimination Comm., the Sixth Circuit invalidated the City of Dearborn’s parade permit ordinance in part on the grounds that its strict liability regime would chill the exercise of First Amendment rights of an individual who might want to join a parade or march. The court explained:
“There is scarcely a more powerful form of expression than the political march. Unlike stationary demonstrations or other forms of pure speech, the political march is capable of reaching and mobilizing the larger community of citizens. It is intended to provoke emotive and spontaneous action, and this *943 is where its virtue lies. As it progresses, it may stir the sentiments and sympathies of those it passes, causing fellow citizens to join in the procession as a statement of solidarity. Automatically criminalizing participation in a permitless march destroys the spontaneity and enthusiasm which public demonstrations of this nature are meant to engender . . .
“[T]he potential protestor would be well-advised to seek personal verification from a city official that the demonstration has been authorized, or run the risk of being thrown in jail. Requiring potential march participants to seek authorization from city officials before joining a public procession or risk being jailed is antithetical to our traditions, and constitutes a burden on free expression that is more than the First Amendment can bear.” (American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d at 611-612; see also People v Bezjak, 11 Misc 3d at 434-435.)
The same analysis applies with equal force to Administrative Code § 10-110. A New Yorker — or even a mere visitor to our city — who sees a march and joins it spontaneously runs the risk of being sentenced to 10 days in jail for violating the Parading Law, as does the casual cyclist who comes abreast of a group of cyclists and joins them. This risk would certainly chill the potential participant’s willingness to join the march or the larger group. Therefore, the Parading Law’s imposition of strict criminal liability would require a finding that Administrative Code § 10-110 is unconstitutional, had I found that defendants were within its reach.
The serious questions as to the constitutionality of Administrative Code § 10-110 provide a further reason for interpreting the language of the Parading Law strictly and finding that the defendants do not come within its reach, so that I need not find Administrative Code § 10-110 unconstitutional. Accordingly, I find that defendants were not required to obtain a permit under the Parading Law.
B. The Complaint Does Not Adequately Allege That a Permit Was Not Obtained
To establish that a permit had not been obtained, each complaint includes only a conclusory statement from the arresting officer that the defendant did not have a permit at that time. Clearly, the officer could not have made that statement without reviewing Police Department records. However, there is *944 no allegation that the officers actually reviewed such records, nor is there any description of any records reviewed. In the absence of such allegations, the officers’ statements are not evidentiary, as required by CPL 100.15 (3). Rather, the statements are hearsay, and do not satisfy the standards of CPL article 100 (People v Alejandro, 70 NY2d 133, 136 [1987]; People v Al-Ladkani, 169 Misc 2d 720, 724-725 [Crim Ct, Kings County 1996]). Consequently, there are no nonhearsay allegations to support a finding that defendants did not have a permit.
Therefore, I find that the complaints are facially insufficient to allege a violation of Administrative Code § 10-110.
II. The Disorderly Conduct Charges are Facially Sufficient Only as to Defendant Giguere
A person is guilty of disorderly conduct under Penal Law § 240.20 (5) “when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: ... 5. He obstructs vehicular or pedestrian traffic.” The Penal Law does not define “obstructs vehicular or pedestrian traffic.” In order to be guilty under this section, a defendant’s conduct must cause “more than a temporary inconvenience” (People v Pearl, 66 Misc 2d 502, 502 [App Term, 1st Dept 1971], citing People v Carcel, 3 NY2d 327, 332 [1957]; People v Nixon, 248 NY 182, 187-188 [1928], overruled on other grounds by People v Santos, 86 NY2d 869 [1995]). Rather, defendant’s conduct must create a serious interference with vehicular or pedestrian traffic (see People v Pearl, 66 Misc 2d at 503; see also People v Bezjak, 11 Misc 3d at 437).
The conduct of obstructing vehicular or pedestrian traffic must be “reinforced by a culpable mental state to create a public disturbance” (People v Tichenor, 89 NY2d 769, 775 [1997]; see also People v Munafo, 50 NY2d 326, 331 [1980]; People v Pritchard, 27 NY2d 246, 248 [1970]). The information must allege facts, either about the defendant’s conduct or about the surrounding circumstances, to support an inference that defendant possessed the requisite intent or recklessness (see People v Leiner, NYLJ, Oct. 15, 1997, at 34, col 5 [App Term, 2d & 11th Jud Dists], lv denied 91 NY2d 894 [1998]).
In considering whether an information alleging disorderly conduct adequately alleges that defendant had the requisite intent or recklessness, a court should consider the following factors: (1) the extent to which defendant’s conduct annoyed others; (2) whether defendant persisted in the conduct after warnings by others or the police; (3) whether defendant’s conduct *945 created at least the risk that disorder might result; and (4) whether defendant’s conduct occurred in a public place (People v Maher, 137 Misc 2d 162, 168 [Crim Ct, NY County 1987], affd 142 Misc 2d 977 [App Term, 1st Dept 1989], lv denied 74 NY2d 794 [1989]; see also People v Munafo, 50 NY2d at 331; People v Gonzalez-Muniz, 2001 NY Slip Op 40182[U] [Crim Ct, NY County 2001]).
Bicycle riders generally enjoy all of the rights and are subject to all of the duties of car drivers on roadways, except to the extent that their conduct is governed by more specific rules or laws (Vehicle and Traffic Law § 1231). The primary concern of the rules and regulations governing bicyclists is that bicyclists should not cause “undue interference with the flow of traffic” (Vehicle and Traffic Law § 1234 [a]), while vehicle drivers are required to exercise due care to avoid colliding with any bicyclist on the roadway (Vehicle and Traffic Law § 1146).
The rules governing bicyclists recognize that bicycles are inherently much slower, more vulnerable and take up less space than cars or motorcycles (see People v Bezjak, 11 Misc 3d at 437). For example, bicyclists are required not to ride more than two abreast (Vehicle and Traffic Law § 1234 [b]). There is, however, no criminal sanction for a bicycle rider who violates that rule (Vehicle and Traffic Law § 1234 [b]; see Carrieri, 2004 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 62A, Vehicle and Traffic Law § 1234, 2006 Pocket Part, at 143 [according to the Department of Motor Vehicles, failure to keep to the right is a moving violation which does not result in a surcharge, points or a conviction that is placed on a license]). In contrast, Penal Law § 240.20 (5) provides criminal sanctions for a person who obstructs traffic with the requisite intent. Thus, mere proof that an individual violated a bicycle rule is insufficient to establish disorderly conduct without a showing that the person intended “to create a public disturbance” (People v Tichenor, 89 NY2d at 775 [1997]).
Defendants Barrett and Erickson
The complaints allege only that defendants Barrett and Erickson were riding four abreast, with the result that “numerous vehicles” were unable to proceed in the right traffic lane, and were forced to switch lanes to avoid colliding with defendants. The complaints do not allege how many cars were allegedly forced to switch lanes or that any of them had difficulty doing so (cf. People v Munafo, 50 NY2d at 331). The complaints also do not allege the duration of defendants’ conduct. At best, the *946 complaints allege a temporary inconvenience to an unspecified number of cars that were required to switch lanes, but whose movement was not otherwise impeded.
The court takes judicial notice that, in ordinary traffic, cars change lanes for a variety of reasons, including, for example, avoiding slower moving cars, moving away from buses and evading potholes. The complaints do not allege that a larger number of cars than usual changed lanes as a result of defendants’ conduct, or that traffic in general was affected. Thus, there is no basis for inferring that defendants engaged in conduct that seriously interfered with traffic.
This case is similar to People v Nixon (248 NY 182 [1928], supra) and People v Carcel (3 NY2d 327 [1957], supra), although those cases involved pedestrian traffic and an earlier version of the disorderly conduct statute. For example, in Nixon, the Court found that the defendants were not guilty of disorderly conduct where their conduct caused some pedestrians to step into the roadway but the pedestrians were not otherwise prevented from proceeding (Nixon, 248 NY at 185-188; see also People v Pearl, 66 Misc 2d 502 [1971]; United States v Williams, 2004 WL 1348981, 2004 US Dist LEXIS 10943 [SD NY 2004]). The complaints against defendants Erickson and Barrett do not allege any greater obstruction to the cars which changed lanes than to the pedestrians who had to step into the roadway as a result of defendant Nixon’s conduct.
In addition, the complaints against Erickson and Barrett do not set forth any facts from which it can be inferred that they intended to obstruct traffic. All that is alleged is that they were riding abreast with two other cyclists. There is no allegation that an officer asked them to ride single file and that they refused. There is no allegation that the drivers of the other cars were unable to proceed or yelled at them, or that their conduct snarled traffic (cf. People v Maher, 137 Misc 2d at 168). I also cannot infer from their failure to obtain a permit that they intended to create disorder since I found that they were not required to obtain a permit. Accordingly, I find that the facts alleged in the information do not establish that they had the requisite intent to create disorder.
Accordingly, the People have failed to establish a prima facie case of disorderly conduct against defendants Erickson and Barrett under Penal Law § 240.20 (5).
Defendant Mazurkiewicz
The complaint alleges that defendant Mazurkiewicz rode her bike side by side with at least 50 other riders at a slow speed, *947 and, as a result, vehicles had to drive at an extremely slow rate of speed. The complaint does not allege how many drivers were affected, how long they were affected, or whether defendant’s conduct caused a traffic jam. While the complaint states that cars had to drive very slowly, there is no allegation that the cars were not able to proceed forward. The court takes judicial notice that traffic often moves slowly on Manhattan streets, for a variety of reasons. As a result, I do not find that the allegation that defendant Mazurkiewiez’s conduct caused the cars to move slowly is sufficient to allege that her conduct obstructed traffic. Therefore, I find that the information does not state a sufficient basis to believe that defendant Mazurkiewicz obstructed vehicular traffic.
Nor does the information set forth sufficient facts to believe that defendant Mazurkiewicz possessed the requisite intent. There is no allegation that she was given any warning, or that drivers were annoyed, or that there was a risk of disorder. Rather, at worst, her conduct caused cars to move slowly, which is certainly not an unusual occurrence in Manhattan.
Therefore, I find that the complaint does not state a prima facie case of disorderly conduct as to defendant Mazurkiewicz.
Defendant Giguere
The complaint against defendant Giguere alleges that she rode her bicycle at a slow rate of speed through an intersection, while 50 other riders did the same, preventing vehicles and pedestrians from passing and moving forward in the street. Moreover, defendant Giguere and the other riders with her are alleged to have gone through a red light, which is a traffic infraction which has a real potential to cause public disorder under these circumstances. I find that the allegation that her conduct prevented vehicles and pedestrians from passing forward states a prima facie case that she obstructed traffic. Moreover, the allegation that she committed a traffic infraction by failing to obey a traffic signal provides a basis for inferring that she intended to cause public inconvenience, or recklessly created a risk of it. Accordingly, I decline to dismiss the disorderly conduct charge against defendant Giguere.
III. Defendant Giguere’s Motion to Dismiss in the Interests of Justice is Denied
In view of my dismissal of all charges except those against defendant Giguere, I need only address this motion as to her. In considering the statutory factors set out in CPL 170.40, I find that there is no compelling factor which convinces me that pros *948 ecution of defendant Giguere would constitute injustice. In particular, I find that defendant Giguere’s alleged conduct of running a red light with a large group of cyclists could cause serious disorder and, contrary to the statements in defendant’s motion, certainly provided an appropriate basis for the officer to arrest her. In view of the allegation that she violated a traffic control law which promotes public safety, a dismissal could have a negative impact on both public safety and the confidence of the public in the judicial system. Therefore, I am denying her motion to dismiss in the interests of justice.
IV Remaining Motions
Defendant Giguere’s motion to suppress physical evidence or, alternatively, for a Mapp/Dunaway hearing is granted to the extent of ordering that such a hearing be held. Defendant Giguere’s motion to preclude the People from introducing various types of evidence at trial, including any unnoticed statements and identification testimony and defendant’s prior convictions or bad acts, is reserved for the trial court. Defendant Giguere retains all rights pursuant to CPL 255.20 (2).

. See e.g. Bray v City of New York, 346 F Supp 2d 480 (SD NY 2004) (Bray I), subsequent op 356 F Supp 2d 277 (SD NY 2004) (Bray II); City of New York v Times’ Up, Inc., 11 Misc 3d 1052(A), 2006 NY Slip Op 50189(U) (Sup Ct, NY County 2006); see also, Baker, Police Seek New Controls on Protesters and Bicyclists, New York Times, July 19, 2006, at B2, col 1; Baker, Police Move to Ease Proposed Rules on Permits for Protesters, New York Times, Aug. 19, 2006, at Bl, col 1.

. Indeed, at least one judge of this court relied on that representation in finding the Parading Law constitutional (see People v Namer, 11 Misc 3d 409, 414-415 [Crim Ct, NY County 2006]; see also affirmation of Joseph Perry in response to defendant Mazurkiewicz’s motion ¶ 12; affirmation of Justin Delle Cave in response to defendant Giguere’s motion ¶ 6).

. American Heritage Dictionary of English Language (4th ed 2000); Webster’s Third New International Dictionary (Unabridged 2002).

. Webster’s Third New International Dictionary (Unabridged 2002); American Heritage Dictionary of English Language (4th ed 2000).

. American Heritage Dictionary of English Language (4th ed 2000); Webster’s Third New International Dictionary (Unabridged 2002).

. American Heritage Dictionary of English Language (4th ed 2000).

. American Heritage Dictionary of English Language (4th ed 2000); Webster’s Third New International Dictionary (Unabridged 2002).

. American Heritage Dictionary of English Language (4th ed 2000); Webster’s Third New International Dictionary (Unabridged 2002).

. The court takes judicial notice that January 27, 2006, the date when defendants were arrested, was the last Friday of the month, which is the date on which Critical Mass rides normally occur (Bray I, 346 F Supp 2d at 483). However, the court cannot infer from that coincidence that defendants were participating in a Critical Mass ride. They may have had nothing to do with Critical Mass participants; they might have been riding their bicycles, individually or as a group, and found themselves near participants in the Critical Mass ride; or they might have been bicycling and decided to join the ride as it passed them.

. Defendants have not argued that the Parading Law is content based (see also People v Bezjak, 11 Misc 3d 424, 431 [Crim Ct, NY County 2006]; People v Namer, 11 Misc 3d at 413-414).