■ In the Matter of PATRICK L., a Person Alleged to be a Juvenile Delinquent, Appellant. [665 NYS2d 70] —Order, Family Court, New York County (Gloria Sosa-Lintner, J.), entered September 16, 1996, adjudicating the appellant a juvenile delinquent, after a fact-finding determination that he had committed acts which, if committed by an adult, would constitute the crimes of criminal possession of marijuana in the fifth degree, and two counts of unlawful possession of a weapon by a person under 16, and placing him with the Division for Youth for one year, unanimously affirmed, without costs.

In support of the presentment agency's petition to declare the appellant a juvenile delinquent, Officer Quillian Virgil testified that on the morning of May 15, 1996, he saw the appellant

smoking a marijuana cigarette on the street in front of 262 West 132nd Street. When the officer asked the appellant whether he had anything on him, the appellant disclosed that he had a box cutter in his pants pocket and a razor blade in his wallet. The Family Court found that the appellant had committed acts which, if committed by an adult, would violate Penal Law § 221.10 (1) and § 265.05.

Under section 221.10 (1), a person commits criminal possession of marijuana in the fifth degree if he knowingly and unlawfully possesses marijuana in a public place and such marijuana is burning or open to public view. The appellant does not challenge the Family Court's determination that he violated this statute.

Under section 265.05, it is unlawful for a person under 16 to possess "any dangerous knife". There is no explicit requirement of intent to use the object unlawfully against another (*compare*, § 265.01). The appellant contends that the Family Court erred in finding that the razor blade and box cutter were "dangerous knives" within the meaning of section 265.05. For the reasons below, we affirm the Family Court's determination.

According to case law, the ban on "dangerous knives" would cover not only an obvious weapon but also an ordinary sharp object that, based on the circumstances of its possession and use, functions as an instrument of offensive or defensive combat (*Matter of Jamie D.*, 59 NY2d 589, 592 [1983]). This broad interpretation complicates courts' attempts to apply the statute, since many sharp objects (e.g., knitting needles or penknives) are capable of inflicting injury if used as weapons, but are also utilitarian objects that are often carried for lawful purposes (*Matter of Alicia P.*, 112 Misc 2d 326, 330 [Sup Ct 1982]).

In *Matter of Jamie D.*, the Court of Appeals set forth guidelines for determining whether a sharp object comes within the scope of section 265.05. Some knives are clearly covered by the statute because they are primarily designed as weapons, such as bayonets. In addition, a utensil which has innocent utilitarian functions will also be considered a "dangerous knife" if (1) it was physically modified in a way that converted it into a weapon, or (2) "the circumstances of its possession, although there has been no modification of the implement, may permit a finding that on the occasion of its possession it was essentially a weapon rather than a utensil." (*Supra,* at 593.)

Subsequent judicial application of these principles has produced varying results and often seems to depend on case-specific facts that are not detailed at length in the opinions (*see, e.g., Matter of Chidi N.*, 65 AD2d 688 [1st Dept 1978],

holding that a folding knife with four-inch blade is not a dangerous knife). It appears clear, though, that this Court must evaluate the particular facts of each case as a whole in order to apply the *Jamie D.* "circumstances" test.

In the instant case, neither the box cutter nor the razor blade was modified to become more dangerous than an ordinary box cutter or razor blade. Each of these objects could be used as a weapon, but each one also has common utilitarian functions (breaking down cartons, shaving, etc.). The question here, then, is whether the circumstances surrounding the appellant's possession of these objects indicated that he considered either of them to be weapons.

The appellant's unlawful intent is not immediately apparent as it was in *Matter of Jamie D.* (59 NY2d, *supra,* at 591, 593-594), where the teenaged appellant was observed trying to rob another youth at gunpoint, and when apprehended placed his hand on his belt and refused to show the police what he was carrying. The object, a steak knife, was deemed a dangerous knife under section 265.05, because appellant's disposition to violence and his attempt to conceal the knife from the police indicated that he viewed it as a weapon rather than a kitchen utensil. (*Supra,* at 593.)

By contrast, in *Matter of Ricci S.* (34 NY2d 775), the appellant (along with others) entered an apartment that the police were searching for drugs. The hunting knife that they found on him was not deemed a dangerous instrument, presumably because he had not engaged in violent or illicit activity that suggested any intent to use a weapon.

The instant case falls somewhere between these situations. The appellant did not try to conceal the box cutter or razor blade from Officer Virgil, and did not do anything violent, but neither did he simply wander into a location where criminal activity was occurring. He was arrested for smoking marijuana. This alone does not prove that he meant to misuse the box cutter and razor blade, but it raises a suspicion of misbehavior that affects our analysis, especially since teenagers who are involved in buying drugs may be more likely to carry weapons.

However, it is the manner in which the appellant was carrying the razor blade that ultimately tips the balance in favor of treating it as a weapon. It would be legitimate for him to possess a package of razor blades that he might be taking home from the store for personal use. However, it is unlikely that he would carry a single unpackaged blade in his wallet if he intended a use other than in a fight on the street.

The box cutter presents a closer question because the appel-

lant was not carrying it in a suspicious manner. It was in his pocket, with the blade retracted. We believe, nonetheless, that Administrative Code of the City of New York § 10-134.1 supports the inference that box cutters possessed by unsupervised juveniles are likely to be weapons. In 1995, concerned about the widespread use of box cutters by juveniles as weapons, the City Council passed section 10-134.1. This ordinance bans the sale of box cutters to persons under 18 years of age; requires sellers of box cutters to ensure that their wares are not displayed in a manner that facilitates their theft by minors; and bans the possession of box cutters by persons under 22 years of age on school grounds unless the box cutter is being used for a "valid school-related purpose" (§ 10-134.1 [e]) under staff supervision.

It seems safe to conclude that the City Council looked with suspicion upon juveniles' unsupervised possession of box cutters. While we do not hold that this ordinance creates a burden-shifting presumption that a box cutter is a dangerous knife under Penal Law § 265.05, we hold that Administrative Code § 10-134.1 and the facts relied on by the City Council in passing this ordinance provide additional support for concluding that the appellant's box cutter was a weapon.

The determination of the Family Court is therefore affirmed. We have considered the appellant's other contentions and find them to be without merit. Concur—Sullivan, J. P., Rosenberger, Ellerin and Nardelli, JJ.