■ In the Matter of CARLOS M., a Person Alleged to be a Juvenile Delinquent, Appellant. [820 NYS2d 581]—

Order of disposition, Family Court, Bronx County (Clark V. Richardson, J.), entered on or about August 1, 2005, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crimes of criminal possession of a weapon in the fourth degree, criminal mischief in the fourth degree and obstructing governmental administration in the second degree, and placed him in the custody of the New York State Office of Children and Family Services for a period of 12 months, affirmed, without costs.

The court's findings were based on legally sufficient evidence and were not against the weight of the evidence. The weapon charge (Penal Law § 265.01 [2]) was established by evidence that appellant seized a 10-inch kitchen knife and announced his intent to use it to assault another person (see Matter of Jamie D., 59 NY2d 589 [1983]). Appellant's conduct and expressed intent to use a knife in a fight suffice to demonstrate that this knife was a dangerous instrument (see People v Crane, 156 AD2d 704 [1989]).

The criminal mischief charge (Penal Law § 145.00 [1]) was established by evidence that appellant chose, as a means of attacking another person, to throw glass objects that almost certainly would have to shatter in order to injure his opponent, thereby evincing an intent to also destroy property (*see generally People v Getch*, 50 NY2d 456, 465 [1980]). Evidence of intent to injure as well as to destroy did not require appellant to declare his purpose but is fairly inferred from the facts and circumstances proven by competent evidence to the trier of fact. Appellant's argument that precedent holds that incidental property damage does not constitute criminal mischief ignores the distinction that, while unintended property damage may not be criminal mischief (*see People v Washington*, 18 NY2d 366 [1966] [garbage can thrown at victim missed and damaged a car]; *People v Roberts*, 140 AD2d 961 [1988] [victim thrown into a coffee table]), where, as here, a perpetrator damages the very property used to assault his victim, he may be presumed to intend the natural consequences of his acts and may thus be found guilty of criminal mischief. Unlike the cases relied on by appellant, the property was damaged in the act of being used as an instrumentality of an assault and the intent to create a risk to the victim from damaging the property can be fairly inferred. As the dissent concedes, the natural and probable consequences of throwing glass objects is that they will break, provided they meet a certain fragility threshold. The testimony at the fact-finding hearing established that the hurtled glass candlesticks and vases broke and that "there was glass all over the floor." Evidence of such widespread destruction justified Family Court's inference that appellant intended the natural and probable consequences of his actions. Indeed, the other factor in glass-breaking, besides frailty of the object, is the degree of force used. It is undisputed that, during the course of a violent melee, appellant used sufficient force to break the glass.

The obstruction charge (Penal Law § 195.05) was established by evidence that the police were performing an "official function" of securing a crime scene and making an investigation, when appellant interfered by pushing and trying to choke an officer (*see Matter of Davan L.*, 91 NY2d 88 [1997]). The police had the right to direct and control appellant's movements since they knew there had been a fight, property had been destroyed and that appellant was a fight participant. They also had the right to direct appellant to sit so that he would not be able to disrupt the crime scene, hide evidence or procure a weapon (*see People v Romeo*, 9 AD3d 744 [2004]. Concur—Buckley, P.J., Tom, Friedman and Nardelli, JJ.

McGuire, J., concurs in part and dissents in part in a memo-

randum as follows: To sustain a finding that appellant violated Penal Law § 145.00 (1), the presentment agency was required to establish that appellant possessed the specific intent to damage the property of another (*see People v Roberts*, 140 AD2d 961 [1988]). "An intent to injure a person does not satisfy the mens rea requirement of intent to damage property simply because property is damaged in the course of the attack" (*id.* at 961, citing *People v Washington*, 18 NY2d 366 [1966]). A charge of criminal mischief in the fourth degree may be predicated upon recklessly causing damage to property, but only where the conduct results in property damage exceeding $250 (*see* Penal Law § 145.00 [3]).

Here, the evidence adduced at the fact-finding hearing established that appellant threw either a candle, a vase or both at his brother. There is no indication in the record that appellant's "conscious objective" (Penal Law § 15.05 [1]) was to damage the property he threw; the only reasonable inference is that appellant intended to injure his brother.

The majority provides no support for its conclusion that *Washington* and *Roberts* do not control because appellant "damage[d] the very property used to assault his victim." In *Roberts*, the defendant "threw [the victim] upon a coffee table," causing a leg of the table to break (140 AD2d at 961). As the Fourth Department stated in reversing the criminal mischief conviction for damaging the table, "[s]ince the evidence reveals only an intent directed toward [a] person, the People failed to prove that the defendant intended to damage the coffee table" (*id.* [citations omitted]). Here, too, "the evidence reveals only an intent directed toward [a] person." That in this case the damaged property was thrown at another, while in *Roberts* the other person was thrown onto the damaged property, is a trifle that cannot rationally matter.

The majority argues that "appellant chose . . . to throw glass objects that almost certainly would have to shatter in order to injure his opponent, thereby evincing an intent to also destroy property." Assuming for the moment that "glass objects" were thrown and that appellant threw them, the fatal flaw in this argument is that hard and dense glass objects certainly can cause injury. There is not an iota of support in the record for the majority's undefended and implicit assumption that the object or objects thrown—the record is equivocal in this respect—were fragile. If there were such support, I might agree that the evidence would be legally sufficient on the ground the trier of fact could have presumed that appellant intended the natural and probable consequences of his conduct. Here, the

absence of any evidence on the issue of the fragility of the objects thrown bars the conclusion that damage to the objects was probable.

Virtually the only relevant evidence came from appellant's mother. The following comprises the entirety of her testimony regarding the thrown objects and the damage to them: (1) "They [appellant and his older brother] started to throw some candles and vases"; (2) "They both took one and threw at the other. One threw at the other"; and (3) when asked "what happened to the candles and vases," appellant's mother responded, "They broke." From this testimony, one might conclude either that appellant threw a candle or a vase and his brother threw a candle or a vase or that appellant and his brother each threw a candle and a vase. In any event, "[t]hey" (a candle and a vase or two candles and two vases) "broke."

The majority refers to "hurtled glass candlesticks and vases" that broke. In fact, there was no evidence at the fact-finding hearing about candlesticks (as opposed to candles), let alone "glass candlesticks," and no evidence that the vases were made of glass. As for the majority's reference to "[e]vidence of such widespread destruction," the apparent basis for it is the responding police officer's testimony that "there was glass all over the floor" and "[t]he furniture was in disarray." The source of the apparently broken glass was not elucidated by any evidence. Considering that appellant's mother also testified that a fight occurred after the candle and vase (perhaps candles and vases) were thrown, with appellant and his older and heavier brother hitting each other and appellant's brother "thr[o]w[ing] him on the sofa," it is hardly surprising that glass objects in the room were not unscathed. But this evidence is a far cry from legally sufficient evidence that appellant's conscious objective was to damage the candles and vases.

Accordingly, I would modify the order appealed to the extent of vacating the finding regarding criminal mischief in the fourth degree and dismiss that count of the petition, and otherwise affirm.