*799 OPINION OF THE COURT
Robert M. Mandelbaum, J.
Does defendant’s explanation that he was carrying a knife for protection immunize him from a charge of possession of a weapon with intent to use unlawfully?
L
Penal Law article 265 reflects a legislative determination that public safety is best preserved when the state’s citizens are forbidden from roaming the streets equipped with tools of violence. Thus, the weapons statutes proscribe two broad categories of implements whose possession is made criminal. First are those items, such as firearms, gravity knives, switchblades and blackjacks, whose very character “make[s] it evident that the [Legislature [was] entirely justified in regarding them as dangerous and foul weapons seldom used for justifiable purposes but ordinarily the effective and illegitimate implements of thugs and brutes in carrying out their unlawful purposes” (People v Persce, 204 NY 397, 402 [1912]). In enacting Penal Law § 265.01 (1) , which bans certain enumerated objects, the Legislature sought to make possession of such per se weapons “of itself criminal without delaying until opportunity had bred and perhaps permitted the accomplishment of some particular evil design” (Persce, 204 NY at 403). In an effort to keep up with the technological advances of hoods and brigands, the statute has been frequently amended to include newfangled weaponry whose mere possession poses a threat to the public peace (see e.g. L 1986, ch 328 [pilum ballistic knives]; L 1988, ch 220, § 1 [“Kung Fu stars”]; L 1990, ch 264, § 2 [electronic stun guns]).
Second, as to items possessed of legitimate purpose, criminal liability may be imposed only when a defendant intends to use the object unlawfully against another (see Penal Law § 265.01 ; see also Penal Law § 265.02 [1]). And, indeed, when an otherwise-lawful instrument is wielded with criminal intent, nearly any item can become a prohibited weapon (see e.g. People v Cwikla, 46 NY2d 434, 442 [1979] [handkerchief]; Matter of Marvin D., 208 AD2d 360 [1st Dept 1994] [lit cigarette]). For, in that circumstance, “[i]t is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute” (People v Carter, 53 NY2d 113, 116 [1981]; see also Penal Law § 10.00 [13] [defining “dangerous instrument” as “any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or *800 threatened to be used, is readily capable of causing death or other serious physical injury”]).
Common to both categories is the item’s classification as a weapon — either in its essential character or because of the circumstances of its use.
II
Charged by superseding information with criminal possession of a weapon in the fourth degree, harassment in the second degree, and disorderly conduct, defendant moves to dismiss for facial insufficiency. As alleged in the information, defendant repeatedly approached and pestered a passerby to purchase a “SpongeBob” balloon. Each time the prospective buyer, accompanied by two young children, declined defendant’s offer and tried to walk around him, defendant stepped in front of the customer, as if attempting to block her path, while ultimately insisting, “Buy it for your kids!” According to the arresting officer, who witnessed the entire encounter, defendant was noticeably intoxicated. In defendant’s back pocket was found an unsheathed and unwrapped knife with a blade of approximately three inches. Defendant professed, “That’s for my protection. I need it because of drug dealers. I make $500 a week and drug dealers are out to get me.”
“A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e possesses any dagger, dangerous knife, dirk, razor, stiletto ... or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another” (Penal Law § 265.01 [2]). Because defendant’s knife is neither a per se weapon under Penal Law § 265.01 (1), nor a dagger, dirk,[1] razor or stiletto, in order for the information to make out a sufficient charge of criminal possession of a weapon premised on possession of a knife, the allegations here must establish that defendant possessed a “dangerous knife” with intent to use it unlawfully against another.[2]
*801 A.
A “dangerous knife” is “a knife which may be characterized as a weapon” (Matter of Jamie D., 59 NY2d 589, 592 [1983]). A “weapon,” in turn, is “an instrument of offensive or defensive combat” (id. [citation and internal quotation marks omitted]). Thus, although some knives may satisfy the test of dangerousness by virtue of their “inherent characteristics,” a knife not necessarily designed for combative use “may nonetheless be determined to fall within the statutory prescription when the circumstances of its possession including the behavior of its possessor demonstrate that the possessor himself considered it a weapon” (id. at 591; see also Matter of Sean R., 33 AD3d 925, 926 [2d Dept 2006]). Accordingly, a knife “designed and primarily intended for use as [a] utilitarian utensilt ]” will be deemed dangerous within the meaning of the statute when either it has been converted by physical modification into a weapon or the circumstances of its possession “may permit a finding that on the occasion of its possession it was essentially a weapon rather than a utensil” (Jamie D., 59 NY2d at 593).
Here, defendant’s declaration plainly evidences that defendant “himself considered” the knife to be “an instrument of offensive or defensive combat,” and therefore a weapon {id. at 591, 592; see also Matter of Carlos M., 32 AD3d 686, 686 [1st Dept 2006]). The statement, “That’s for my protection,” in effect conflates two distinct assertions — one incriminating, the other potentially exculpatory: “If I use this knife it will be to stab (or menace) someone, but I will be justified in doing so” (cf. People v Kuyal, 225 AD2d 1092, 1092 [4th Dept 1996] [“Defendant testified that he used the knife to defend himself, in order to ‘scare’ the person that was ‘charging’ at him. Thus, defendant used the knife as a weapon”]). Moreover, the manner in which the knife was stowed, unsheathed in his pocket and without wrapping around the blade, further manifests defendant’s subjective belief {cf. Matter of Patrick L., 244 AD2d 244, 246 [1st Dept 1997] [“it is unlikely that (the defendant) would carry a single unpackaged (razor) blade in his wallet if he intended a use other than in a fight on the street”]). Therefore, inasmuch as defendant himself considered the knife to be a weapon, the allegations suffice to es *802 tablish that the knife constitutes a dangerous knife within the meaning of Penal Law § 265.01 (2).[3]
B.
Of course, that a knife is dangerous does not alone make out a charge of fourth degree criminal possession of a weapon, since the statute makes criminal a dangerous knife only when possessed with intent to use it unlawfully against another. But “[t]he possession by any person of any dagger, dirk, stiletto, dangerous knife or any other weapon, instrument, appliance or substance designed, made or adapted for use primarily as a weapon, is presumptive evidence of intent to use the same unlawfully against another” (Penal Law § 265.15 [4]). Thus, by alleging facts of an evidentiary character which, if true, establish that defendant possessed a dangerous knife, the information sufficiently pleads, based on the statutory presumption, that he possessed a weapon with the requisite criminal intent.
To be sure, had defendant remained silent, the weapon-possession charge could not be sustained. For in that event, there would be no proof that defendant himself considered the knife to be a weapon, no evidence that the knife was a dangerous knife, and, therefore, no presumption of unlawful intent (see Matter of Francisco C., 238 AD2d 224 [1st Dept 1997]). [4] Nevertheless, defendant did make a statement here, and an inculpatory one at that (at least in part). Indeed, defendants’ statements are often used to establish the charges against them or to provide probable cause for their arrest, even though no charge could have been brought or arrest made had the defendant said nothing (see e.g. People v Babarcich, 166 AD2d 655 [2d Dept 1990] [defendant’s explanation of presence, determined to be false, established trespass]; People v Gonzalez, 250 AD2d 545 [1st Dept 1998] [burglary]; see also People v Rodriguez, 167 AD2d 122, 123 [1st Dept 1990] [upon observing a knife, police had a right to make inquiry because possession of that knife was a crime if accompanied by intent to use]).
Defendant protests that the weapon charge is nevertheless insufficient, since, he argues, his statement establishes only a *803 lawful intent. And certainly, if defendant intended to use the knife solely in self-defense, he would not be guilty of the crime charged. But this is a trial issue, not a pleading one. In determining the sufficiency of an accusatory instrument, the allegations must be viewed in the light most favorable to the People.[5] Defendant’s admission that he intended to use the knife as a weapon by itself supports the charge, and his untested claim that such use would, however, be justified cannot render the information defective (see People v Almodovar, 62 NY2d 126, 130 [1984] [a person “may not avoid the criminal charge by claiming that he possessed the weapon for his protection”]; see also People v Feingold, 7 NY3d 288, 303 [2006, Kaye, Ch. J., dissenting] [“Legally sufficient evidence . . . cannot be rendered insufficient by a defendant’s mere denial of guilt of the charged crime”]).[6]
m.
A.
Although reliance on the statutory presumption thus enables the People to plead the essential elements of the crime, the presumption is, nevertheless, a rebuttable one (see People v McKenzie, 67 NY2d 695 [1986]; People v Lemmons, 40 NY2d 505, 510 [1976]). At trial the People must prove every element beyond a reasonable doubt, including, of course, that defendant in fact possessed the knife with intent to use it unlawfully against another (see People v Laramore, 1 Misc 3d 5, 6-7 [App Term, 2d Dept 2003]).
*804 To be sure, justification is not a defense to weapon possession (see People v Pons, 68 NY2d 264 [1986]). Inasmuch as the justification statute, by its terms, is limited to situations of actual, not intended, use of force, “it does not follow that because defendant was justified in the actual shooting of the weapon under the particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting” (id. at 267-268; see also People v Okafore, 72 NY2d 81, 87 [1988]). “In other words, the Pons rule prevents a defendant who as a general matter carries an illegal weapon around for possible use in nefarious and unlawful activities from somehow converting his weapon into a legal one merely because in a particular case he uses that weapon in self-defense” (People v Ramos, 193 Misc 2d 564, 567 [Crim Ct, Bronx County 2002]; see also Davis v Strack, 270 F3d 111, 134 [2d Cir 2001]).[7]
“The essence of the illegal cohduct defined in sections 265.01-265.05 of the Penal Law is the act of possessing a weapon unlawfully. The crime may be more serious because of the intent with which the defendant acts but unless the possession is other than innocent there is no crime. Once the unlawful possession of the weapon is established, the possessory crime is complete and, any unlawful use of the weapon is punishable as a separate crime” (Almodovar, 62 NY2d at 130 [citations omitted]).[8]
Pons and Almodovar involved firearms, which are illegal per se. But when, as here, we are dealing with a knife whose mere possession is not itself unlawful, the possessory crime is not complete absent some unlawful use (or intent to use). In other words, defendant’s unlawful intent in this case does not serve as an aggravator for conduct that was already criminal; absent such intent, defendant’s possession was not “other than innocent.”
*805 B.
A justified use is not an unlawful one. After all, the justification defense “must not be viewed as one that operates to negate or refute an aspect of the crime charged” (People v McManus, 67 NY2d 541, 548-549 [1986]). Rather, the defense of justification
“affirmatively permits the use of force under certain circumstances. Pursuant to Penal Law § 35.15, a person ‘may’ use physical force to defend himself or a third person, and his conduct, which would otherwise constitute an offense, is simply not criminal. The defense does not operate to excuse a criminal act, nor does it negate a particular element of a crime. Rather, by recognizing the use of force to be privileged under certain circumstances, it renders such conduct entirely lawful” (id. at 545-546 [citations and footnote omitted]).
Simply put, if defendant’s intended use was justified, it was lawful. Accordingly, although justification is not a defense to criminal possession of a weapon, the People might nevertheless, on these facts, have to prove that defendant’s intended use was not justified, insofar as his statements have put justification (or unjustification) in issue.[9]
Further, when the only evidence of a defendant’s unlawful intent is a permissive presumption arising from the selfsame statement that may serve to exculpate him, the People may well be unable to prove unlawful intent beyond a reasonable doubt (see People v Edwards, 39 AD3d 1078, 1080 [3d Dept 2007] [“bare presumption” outweighed by “competing inference— drawn from the manner in which the dagger was attached to the bed, i.e., in plain view and to permit easy access to one lying in the bed — that the dagger was kept for self-defense, as a means of protection against an intruder”]). (Here, of course, in addition to the presumption based on defendant’s admission, the *806 People allege that defendant was drunk and aggressive while in possession of the unsheathed knife.)
Thus, that “there are no circumstances when justification . . . can be a defense to the crime of criminal possession of a weapon” (Pons, 68 NY2d at 267) means simply that a defendant charged with that crime will not be entitled to have the jury instructed that the People must disprove justification beyond a reasonable doubt (see Penal Law § 25.00 [1]; § 35.00; People v Steele, 26 NY2d at 528). But such defendant is most certainly entitled to an instruction that the People must affirmatively prove that his intended use was unlawful — including, when applicable, that it was unjustified (see CJI2d[NY] Penal Law art 265, Intent to Use Unlawfully and Justification [“The defense of justification does not apply to this crime because that defense applies only to the use of force. You may, however, in determining whether or not the defendant had the intent required for this crime consider the following: The use of a (dangerous knife) to engage in conduct that is justifiable under the law is not unlawful. Thus, an intent to use a (dangerous knife) against another justifiably is not an intent to use it unlawfully. Therefore, to find the defendant guilty of this crime, you must find beyond a reasonable doubt that (the defendant) possessed the (dangerous knife) with the intent to use it against another unlawfully and not solely with the intent to use it justifiably”]). And, of course, the court must, in that circumstance, explain any elements of justification that may be appropriate[10] (see CPL 300.10 [2] [court must “state the material legal principles applicable to the particular case”]).[11]

m

A.
A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person, he “en *807 gages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose” (Penal Law § 240.26 [3]). By repeatedly blocking the path of a pedestrian, who was attempting to travel unmolested down the street with her two small children, and by refusing to accept her declination to purchase his balloon, defendant engaged in a course of conduct which would seriously annoy another person. And although his initial offer to engage in a commercial transaction may have served a legitimate purpose, his continuing to aggressively hawk his wares to an unwilling customer, eventually demanding that she “Buy it for your kids!” did not. Finally, defendant’s intent may “be inferred from the act itself . . . [or] from the defendant’s conduct and the surrounding circumstances” (People v Bracey, 41 NY2d 296, 301 [1977] [internal quotation marks and citations omitted]; see also People v Smith, 79 NY2d 309, 315 [1992]). Accordingly, for purposes of pleading, the harassment charge is facially sufficient (see People v Henderson, 92 NY2d 677, 680 [1999] [“prima facie case requirement is not the same as the burden of proof beyond a reasonable doubt required at trial” (citations omitted)]; see also People v Jennings, 69 NY2d 103, 115 [1986] [“evidence may be legally sufficient to support a charge although it does not prove guilt beyond a reasonable doubt” (citation and internal quotation marks omitted)]).
B.
The disorderly conduct count, however, must be dismissed. A person is guilty of that offense when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he “obstructs vehicular or pedestrian traffic” (Penal Law § 240.20 [5]). The gravamen of disorderly conduct is conduct that provokes, or risks provoking, a “breach of the peace” (People v Munafo, 50 NY2d 326, 331 [1980]) or a “public disturbance” (People v Bakolas, 59 NY2d 51, 54 [1983])— concepts codified in the Penal Law as “public inconvenience, annoyance or alarm” (see Munafo, 50 NY2d at 331; People v Pritchard, 27 NY2d 246, 248 [1970]; see also Penal Law § 240.20). Thus, the disorderly conduct statute applies only to
“situations that carr[y] beyond the concern of individual disputants to a point where they ha[ye] become a potential or immediate public problem. In deciding whether an act carries public ramifications, courts are constrained to assess the nature and *808 number of those attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode under scrutiny” (Munafo, 50 NY2d at 331 [citations omitted]).
Here, the information does not allege that anyone other than defendant and his customer (and her children) was present during the incident. Since the confrontation between defendant and the pedestrian was “confined to these two disputants rather than spread to the public” (id. at 332), defendant’s actions posed no risk of public inconvenience, annoyance, or alarm (cf. People v Jackson, 18 Misc 3d 134[A], 2008 NY Slip Op 50169[U], *1-2 [App Term, 1st Dept 2008], Iv denied 10 NY3d 841 [2008] [“Notably absent was any allegation or proof that a crowd gathered at the scene or that any passersby witnessed the altercation”]). Since the superseding information is devoid of evidence that defendant’s disruptive behavior was “of public rather than individual dimension” (Munafo, 50 NY2d at 331), the charge must be dismissed.

. Although the term “dirk” once referred to a long, straight-bladed dagger used particularly in the Scottish highlands, the “modern test for a dirk is whether the instrument has a blade with at least one sharpened edge which tapers to a point” (Matter of Jesse QQ., 243 AD2d 788, 789 [3d Dept 1997]).

. In order to be sufficient on its face, an information must provide reasonable cause to believe that the defendant has committed the crime charged and contain nonhearsay factual allegations of an evidentiary character that, if true, establish every element of the crime and its commission by the defendant (see CPL 100.15 [3]; 100.40 [1] [b], [c]).

. Contrary to defendant’s argument, neither the intent of the State Legislature in enacting Penal Law § 265.01 (2), nor the meaning of “dangerous knife,” can be determined by referring to the legislative findings supporting Administrative Code of the City of New York § 10-133 — a municipal ordinance enacted by the New York City Council, a distinct legislative body.

. Similarly, should defendant’s statement be suppressed, the presumption would no longer obtain.

. In order to be sufficient on its face, an information must contain factual allegations that would, if true, make out a prima facie, or legally sufficient, case (see People v Alejandro, 70 NY2d 133, 137, 139 [1987]; see also CPL 70.10 [1] [“(l)egally sufficient evidence” defined as “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof”]). In assessing whether evidence is legally sufficient to establish guilt of a charged crime, a court must determine “whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt” (People v Contes, 60 NY2d 620, 621 [1983] [citation and internal quotation marks omitted]).

. Moreover, a rational factfinder might believe the incriminating portions of defendant’s statement, while discrediting the exculpatory (cf. People v Johnson, 281 AD2d 232, 232 [1st Dept 2001] [“The jury could properly reject the self-serving justification claim made in defendant’s statements while crediting his admissions made in the same statements that he shot the victim”]). Defendant, who was observed trying to sell SpongeBob balloons, claimed that he was a target of drug dealers because he earned $500 a week.

. Of course, here, and unlike in Pons, there was never any actual use of the weapon, and thus there is no earlier point in time during which defendant’s intent may (or may not) have differed from his later justified intent. Indeed, even accepting defendant’s statement as true, the need to ward off an assailant might never materialize. The only relevant intent in defendant’s case is the intent he harbored just prior to his arrest, when, although he may have planned to ward off drug dealers, he never actually brandished the knife.

. Accordingly, a verdict acquitting a defendant for homicide (or assault) is not necessarily repugnant to a conviction for possession of the murder weapon (see People v Lucas, 186 AD2d 589, 590 [2d Dept 1992]; People v Olivera, 157 AD2d 676, 677 [2d Dept 1990]).

. A defendant successfully injects self-defense into a case when, “on any reasonable view of the evidence, the fact finder might have decided that defendant’s actions were justified” (People v Padgett, 60 NY2d 142, 145 [1983] [addressing justification defense]). Moreover, the evidence must be viewed in the light most favorable to the defendant (see People v Watts, 57 NY2d 299, 301 [1982]; People v Steele, 26 NY2d 526, 529 [1970]). Of course, merely raising the issue of justification does not establish it. A factfinder, considering all the evidence, might conclude that if defendant were actually to encounter the drug dealers who he contends are after his money, he could end up the initial aggressor (see Penal Law § 35.15 [1] [b]).

. For example, depending on the particular facts of a case, the court may need to explain that the jury must determine whether the defendant’s intended plans for using his knife imposed upon him a duty to retreat (see Penal Law § 35.15 [2] [a]), or, indeed, whether the defendant’s stated belief that he was in imminent danger of being subjected to unlawful physical force was reasonable (see Penal Law § 35.15 [1]).

. Nor does the Pons rule prevent defendant from arguing that his intended use was justified, and therefore lawful (cf. People v Green, 5 NY3d 538, 544 [2005] [because a good faith claim-of-right is not a statutory defense to robbery, the defendant was not entitled to a claim-of-right charge; the defendant was, however, “free to make (the claim-of-right) argument to the jury” in order to negate larcenous intent]).