OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
On June 20, 2010, defendant, a citizen of Tunisia, was arrested for criminal possession of a weapon in the fourth degree *305 under Penal Law § 265.01 (5). Specifically, he was charged under a provision that criminalizes only a non-United States citizen’s possession of a dangerous instrument or weapon. As a noncitizen, defendant maintains that the criminal law under which he is charged discriminates against him in violation of his right to equal protection under the law under the Fourteenth Amendment to the United States Constitution.
Factual Background
Defendant Tyrek Bounasri, who lives and owns a small grocery store in Rochester, New York, has lawful permanent resident alien status in the United States under 8 USC § 1101 (a) (20). As a lawful permanent resident, he is legally permitted to purchase firearms in New York State. (See Penal Law § 400.00.)
On June 17, 2010, after properly completing and submitting all the requisite application documents, defendant bought a shotgun from Dick’s Sporting Goods store in Rochester and took it to his grocery store. Three days later, defendant rode home from his store on his bicycle while carrying his new loaded shotgun that was covered by a blanket. As he arrived home and was riding up his driveway, the police stopped and arrested him for criminal possession of a weapon in the fourth degree under Penal Law § 265.01 (5). That law provides: “A person is guilty of criminal possession of a weapon in the fourth degree when: ... (5) He possesses any dangerous or deadly weapon[1] and is not a citizen of the United States.” (Penal Law § 265.01 [5].)
Defendant contends that this law, which criminalizes his conduct solely because of his status as a noncitizen, is unconstitutional. As a result, he asserts, the criminal charge he faces must be dismissed.
Discussion
The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a state from “denying] to any person within its jurisdiction the equal protection of the laws.” (US Const, 14th Amend, § 1.) In considering whether a state statute violates the Equal Protection Clause, the United States Supreme Court applies different levels of scrutiny to different types of classifications. A strict scrutiny analysis must be applied to classifications that discriminate against persons based on their alienage. (See Bernal v Fainter, 467 US 216, 227-228 [1984]; Nyquist v Mauclet, 432 US 1, 7-12 *306 [1977]; see Hernandez v Robles, 7 NY3d 338, 375 [2006]; Matter of Aliessa v Novello, 96 NY2d 418, 430-431 [2001].)
This heightened level of judicial scrutiny is required when a state statute classifies by alienage, race or national origin because “[t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy — a view that those in the burdened class are not as worthy or deserving as others.” (Cleburne v Cleburne Living Center, Inc., 473 US 432, 440 [1985].) Under a strict scrutiny analysis, a state law will withstand an equal protection challenge only when the state can show that the law “furthers a compelling state interest by the least restrictive means practically available.” (Bernal v Fainter, 467 US at 227; see Matter of Aliessa v Novello, 96 NY2d at 430.)
Plainly, Penal Law § 265.01 (5), which prohibits only a noncitizen’s possession of a dangerous or deadly weapon, is an alienage-based classification. Accordingly, the People properly stipulated that the law’s constitutionality must be evaluated under a strict scrutiny analysis.[2] Despite their burden to do so, however (see Dunn v Blumstein, 405 US 330, 335 [1972]), the People did not proffer any state interest, let alone a compelling state interest, to justify New York’s discriminatory law.[3]
The People’s failure to explain how Penal Law § 265.01 (5) furthers a compelling state interest is perhaps understandable given the provision’s lack of a documented legislative history. The statute originated more than a century ago when New York State amended Penal Code of 1881 § 410 to include a provision that “[n]o person not a citizen of the United States, shall have or carry firearms or dangerous weapons in any public place at any time.” (L 1905, ch 92, § 2.) Neither chapter 92’s Bill Jacket nor the Governor’s signing message explains this amendment to *307 New York’s Penal Code of 1881. It is not unlikely, however, that the amendment was adopted as a reaction to a wave of immigrants to New York State in the late 1800s and early 1900s.
Regardless of the rationale for the law’s enactment in 1905, there is no compelling state interest for its existence today. Article 265 of the Penal Law reflects a legislative determination that “public safety is best preserved when the [people in the state] are forbidden from roaming the streets equipped with tools of violence.” (People v Richards, 22 Misc 3d 798, 799 [Crim Ct, NY County 2008].) In enacting Penal Law § 265.01, the New York State Legislature sought to ban the possession of certain enumerated weapons “without delaying until opportunity had bred and perhaps permitted the accomplishment of some particular evil design.” (People v Persce, 204 NY 397, 403 [1912].) There is no conceivable reason that aliens should be distinguished from citizens to achieve the law’s otherwise legitimate public safety objectives.
Recognizing the absence of a compelling state interest, courts in several states outside of New York have invalidated, on equal protection grounds, laws similar to Penal Law § 265.01 (5). For instance, in Chan v City of Troy (220 Mich App 376, 559 NW2d 374 [1996]), the court struck a Michigan law that allowed only United States citizens to obtain pistol permits. Similarly, in State v Chumphol (97 Nev 440, 634 P2d 451 [1981]), the court invalidated a Nevada law prohibiting aliens from possessing concealable firearms. (See also People v Rappard, 28 Cal App 3d 302, 104 Cal Rptr 535 [1972] [law prohibiting aliens from possessing concealable firearms violates Equal Protection Clause].)
Like the discriminatory laws in Michigan, Nevada, and California, Penal Law § 265.01 (5), which criminalizes defendant’s conduct solely because of his status as a noncitizen, does not survive constitutional muster under a strict scrutiny test. As a result, that provision violates defendant’s constitutional right to equal protection under the law.
Conclusion
For the reasons set forth above, Penal Law § 265.01 (5) impermissibly discriminates against noncitizens such as defendant. Defendant’s motion to dismiss the charge under Penal Law § 265.01 (5) that is pending against him is therefore granted.

. A shotgun is defined as a deadly weapon under Penal Law § 10.00 (12).

. In 1914, the United States Supreme Court upheld the constitutionality of a Pennsylvania law that prohibited “foreign-born” persons from possessing shotguns or rifles. (See Patsone v Pennsylvania, 232 US 138 [1914].) However, Patsone predated the Court’s development of its multitiered analytical framework applicable to equal protection challenges, including the strict scrutiny analysis applicable to suspect classifications, as well as the Court’s subsequent decisions that “gradually have restricted the activities from which States are free to exclude aliens.” (Ambach v Norwick, 441 US 68, 73 [1979].)

. In its September 16, 2010 letter, the court invited the New York State Attorney General to intervene in this action pursuant to Executive Law § 71 and CPLR 1012 (b) to address the constitutionality of Penal Law § 265.01. In his September 29, 2010 reply letter, the Attorney General declined to do so.